In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3126

ALMA ANGEL-RAMOS,

Petitioner,

v.

JANET RENO and IMMIGRATION AND
NATURALIZATION SERVICE,

Respondents.


Petition for Review of an Order
of the Board of Immigration Appeals.
No. A73 363 465


Argued April 18, 2000--Decided September 19, 2000


   Before FLAUM, Chief Judge, RIPPLE and WILLIAMS,
Circuit Judges.

   RIPPLE, Circuit Judge.  Alma Angel-Ramos entered
the United States without inspection in 1989.
Less than 6 years later, the Immigration and
Naturalization Service ("INS") raided her place
of business and discovered her presence in the
United States as an illegal alien. It thereafter
served her with an order to show cause and with
charges of deportability. Ms. Angel-Ramos then
applied for suspension of deportation, but an
immigration judge ("IJ") denied her application.
She appealed the IJ's decision to the Board of
Immigration Appeals ("BIA"), which affirmed the
decision of the IJ, although on alternative
grounds. Ms. Angel-Ramos then sought review in
this court. For the reasons set forth in the
following opinion, we affirm the decision of the
BIA.

I
BACKGROUND
A.  Facts

   Ms. Angel-Ramos entered the United States from
Mexico without inspection on August 1, 1989, and
she claims that she has resided continuously in
the United States since that date. In 1995, the
INS raided Ms. Angel-Ramos' place of business,
arrested her and instituted deportation

proceedings against her. On May 10, 1995, the INS served her with an order to show cause, which charged her with deportability for entering the United States without inspection. Ms. Angel-Ramos then applied for a suspension of deportation.

B.  Proceedings Before the Immigration Judge

An IJ reviewed Ms. Angel-Ramos' application for a suspension of deportation and explained that, before Ms. Angel-Ramos could be eligible for suspension of deportation, she needed to establish that she had been present continuously in the United States for at least 7 years. In making its decision on whether Ms. Angel-Ramos had established the requisite continuous presence, the IJ relied on the BIA decision of Matter of N-J-B-, Int. Dec. 3309 (BIA 1997), vacated by Att'y Gen. Order No. 2093-97 (Jul. 10, 1997). According to Matter of N-J-B-, the IJ stated, the relevant time frame to establish the 7 years of continuous presence started on the date Ms. Angel-Ramos entered the United States and ended on the date that she was served with her order to show cause. Finding that Ms. Angel-Ramos could establish less than 6 years of physical presence in the United States between those two dates, the IJ denied Ms. Angel-Ramos' application for suspension of deportation. Ms. Angel-Ramos thereafter appealed the IJ's denial of her application to the BIA.

C.  Appeal to the Board of Immigration Appeals

The BIA affirmed the IJ's decision, although on alternative grounds. After the IJ first issued its decision on Ms. Angel-Ramos' application, the Attorney General vacated the decision relied on by the IJ. The BIA found, however, that its own subsequent decision of Matter of Nolasco, Int. Dec. 3385 (BIA 1999) (en banc), still required the denial of Ms. Angel-Ramos' application. In Matter of Nolasco, the BIA explained, it had determined again that service of the order to show cause ended the period of an alien's continuous physical presence in the United States. Because Ms. Angel-Ramos' order to show cause was served less than 6 years after her entry into the United States, the BIA held that she had not established the requisite 7 years of continuous physical presence. Therefore, the BIA denied her application for suspension of deportation.

II
DISCUSSION
A.  Statutory Interpretation

For an alien such as Ms. Angel-Ramos to be granted a suspension of deportation, she must establish first that she has been continuously present in the United States for 7 years./1 See Urban v. INS, 123 F.3d 644, 648 (7th Cir. 1997). At the time Ms. Angel-Ramos applied for suspension of deportation, sec. 244 of the Immigration and Nationality Act ("INA") was the governing provision in deportation proceedings. In order to determine whether an alien had met the requisite 7 years of continuous physical presence, sec. 244 counted from the alien's date of entry into the United States until the date the alien filed her application for suspension of deportation.

1. IIRIRA Amendments

In 1996, Congress amended the INA by enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, 3009-627 (1996). With this amendment, Congress changed the applicable terms of art for immigration proceedings. Before the amendment, Congress had referred to orders to show cause, deportations, and suspensions of deportation, but after the amendment, Congress substituted new language for the same actions: notices to appear, removals, and cancellations of removal. Congress also altered somewhat the substantive requirements applicable to aliens in immigration proceedings. When Congress amended the INA, it replaced sec. 244 with sec. 240A. Section 240A, similar to sec. 244, sets forth the requirements for an alien to avoid removal from the United States,/2 such as continuous physical presence, but the section also frames a new rule for determining the length of an alien's continuous presence in the United States. As the statute explains, "any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear" or when the alien is convicted of one of several specified offenses, whichever is earliest. IIRIRA, Pub. L. No. 104-208, sec. 309(c)(5), 110 Stat. 3009, 3009-627 (1996), INA sec. 240A (d)(1), 8 U.S.C. sec. 1229b(d). This is referred to as the "stop time" rule.

2. IIRIRA Transitional Rules

Although most of the IIRIRA amendments do not apply to aliens such as Ms. Angel-Ramos, who were placed in deportation proceedings before the effective date of the Act (April 1, 1997), see Note to 8 U.S.C. sec. 1101; Matter of Nolasco, the amendments did create special transitional rules for those aliens in proceedings as of the Act's effective date. See Note to 8 U.S.C. sec.

1101; Matter of Nolasco. Among them is IIRIRA sec. 309(c)(5): "Transitional Rule with Regard to Suspension of Deportation." This provision states that the stop time rule for calculating an alien's continuous presence shall apply to notices to appear issued before, on, or after the effective date of the Act./3 See IIRIRA sec. 309(c)(5). Confusion arose from this provision because the term "notice to appear" was not in use before the effective date of the Act. Also, even though Congress referred to suspension of deportation in the section's title, Congress then used notices to appear in the section's text although orders to show cause, and not notices to appear, applied to suspension of deportation.

In Matter of N-J-B-, the BIA attempted to clarify the ambiguity created by this provision and held that IIRIRA sec. 309(c)(5) applied the stop time rule to orders to show cause. If the stop time rule applied to orders to show cause, the BIA reasoned, then the stop time rule applied to deportation proceedings. Furthermore, because deportation proceedings did not exist after the effective date of IIRIRA, the stop time rule had to apply to deportation proceedings pending at the time of IIRIRA's effective date.

3.  NACARA Clarifications

Soon after the BIA issued Matter of N-J-B-, the Attorney General withdrew Matter of N-J-B- as precedent because sec. 309(c)(5) referred explicitly to notices to appear rather than to orders to show cause. Before the Attorney General could rule on the matter herself, however, the President signed into law the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, sec. 203(a), 111 Stat. 2160, 2196-2198 (1998). Section 203(a)(1) of NACARA, entitled "Transitional Rules with Regard to Suspension of Deportation," amended IIRIRA sec. 309(c)(5). This new amendment clarifies that the stop time rule for determining an alien's continuous presence "shall apply to orders to show cause . . . issued before, on, or after the effective date of the enactment of this Act." NACARA sec. 203(a)(1)./4

In the BIA decision of Matter of Nolasco, Int. Dec. 3385 (BIA 1999) (en banc), the BIA determined that the language of IIRIRA sec. 309(c)(5), as revised by NACARA sec. 203(a)(1), was unambiguous. As the BIA discussed, the section is titled "Transitional Rules with Regard to Suspension of Deportation" and requires the stop time rule to apply to orders to show cause. See id. Because, with IIRIRA, Congress removed suspension of deportation from the INA, the BIA assumed that Congress intended the stop time rule

to apply to suspension of deportation applications pending as of the date IIRIRA took effect. Also, according to the BIA, in the NACARA amendment, Congress explicitly stated that the stop time rule applied to all orders to show cause issued before, on, or after the effective date of the Act. As the BIA explained, because the stop time rule applied to cases in which an order to show cause had been issued and because orders to show cause were issued only in deportation proceedings, then the stop time rule must apply to deportation proceedings. Moreover, because NACARA sec. 203(a)(1) stated that the stop time rule should apply to all orders to show cause issued before, on, or after the effective date of the Act, and because orders to show cause existed only before the effective date of the Act, then the provision must apply to deportation proceedings pending on the effective date of the Act.

The BIA also found that the legislative history of NACARA supported its conclusion that the stop time rule applied to pending deportation proceedings. As the BIA pointed out, the Senate Appropriations Committee issued an explanatory statement to clarify NACARA sec. 203's modification of IIRIRA sec. 309(c)(5). The statement explained that the "'the "stop time" rule established by [IIRIRA sec. 309(c)(5)] in section 240A of the INA shall apply generally to individuals in deportation proceedings before April 1, 1997, with certain exceptions [for certain classes of aliens].'" Matter of Nolasco, Int. Dec. 3385 (quoting 143 Cong. Rec. S12660). The BIA noted that "[t]his statement reflects an express intention to apply the stop time rule of section 240A of the Act to deportation cases, not just to removal cases, and to apply that rule generally as of the effective date of the IIRIRA." Id.

The BIA also rested its interpretation on an explanatory memorandum for NACARA that the Senate Appropriations Committee submitted to the House of Representatives for consideration before its vote on the amendment. This memorandum states that NACARA sec. 203(a)(1) "amends the transition rule governing eligibility for suspension of deportation for those who were in exclusion or deportation proceedings as of April 1, 1997, the effective date of IIRIRA." Id. (quoting 143 Cong. Rec. S12265). The memorandum then explains that "'Section 203(a) [of NACARA] generally codifies the majority decision in Matter of N-J-B (sic) by stating explicitly that orders to show cause have the same "stop time" effect as notices to appear.'" Id. (quoting 143 Cong. Rec. S12265, S12266). The BIA therefore concluded that the stop time rule applied to orders to show cause and applications

for suspension of deportation pending at the time IIRIRA was enacted, such that an alien's period of continuous presence in the United States stopped on the date that the alien was served with an order to show cause. We note that we give deference to the BIA's interpretation of the immigration statute. See INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25 (1999).

We also note that four of our sister circuits have addressed this exact issue since the BIA decided Nolasco, and all have interpreted IIRIRA sec. 309(c)(5) and NACARA sec. 203(a)(1) consistently with the BIA's interpretation in Nolasco. See Afolayan v. INS, ___ F.3d ___, 2000 WL 1010775 (8th Cir. July 24, 2000); Rivera-Jimenez v. INS, 214 F.3d 1213 (10th Cir. 2000); Appiah v. INS, 202 F.3d 704 (4th Cir. 2000) petition for cert. filed (U.S. June 15, 2000) (No. 99-10039); Tefel v. Reno, 180 F.3d 1286 (11th Cir. 1999), cert. denied, 120 S. Ct. 2657 (2000).

We agree that the plain language of IIRIRA sec. 309(c)(5), as revised by NACARA sec. 203(a)(1), requires the application of the stop time rule to orders to show cause and suspension of deportation proceedings pending at the time IIRIRA became effective. Congress stated explicitly that the stop time rule applies to orders to show cause. Because orders to show cause do not survive IIRIRA, NACARA sec. 203(a)(1) clarifies that the stop time rule applies to pending applications for suspension of deportation in which orders to show cause had been issued.

Contrary to this interpretation, Ms. Angel-Ramos contends that NACARA sec. 203(a)(1) should not be applied retroactively to pending suspension of deportation proceedings. She claims that retroactive application of the amendment would violate her due process rights and would contradict the presumption against retroactivity. The INS asserts that Congress explicitly provided that NACARA sec. 203(a)(1) was to apply retroactively and that, once Congress has made its intent clear, then the presumption against retroactivity is no longer applicable. The language of IIRIRA sec. 309(c)(5) states that the stop time rule shall apply to notices to appear "issued before, on, or after the date of the enactment of the Act," and NACARA sec. 203(a)(1) states that the stop time rule shall apply to orders to show cause "issued before, on, or after the date of the enactment of the Act." The "before" language clearly shows Congress' intent to apply these provisions retroactively. See Landgraf v. USI Film Prods., 511 U.S. 244, 268 (1994) (reaffirming the principle that the

clearly expressed intent of Congress to apply a statute retroactively overcomes the presumption against retroactivity). Accordingly, the stop time rule applies to Ms. Angel-Ramos' application for suspension of deportation. Therefore, because under the stop time rule an alien's continuous presence is calculated from her date of entry into the United States to the date the INS served her with an order to show cause, and because Ms. Angel-Ramos has less than 7 years between those two dates, she is not statutorily eligible for suspension of deportation.

B.  Constitutional Challenges

   Ms. Angel-Ramos also asserts that, assuming NACARA sec. 203(a)(1) applies to her, it violates her rights to due process and to equal protection of the law. She maintains that the continuances in her case allowed the IJ to apply new precedent that was later withdrawn, resulting in a due process violation. She also argues that NACARA sec. 203(a)(1) violates the Equal Protection Clause because it treats certain classes of aliens differently than others. We address each of these arguments in turn.

   Although we recognize that due process applies to deportation proceedings, see Podio v. INS, 153 F.3d 506, 509 (7th Cir. 1998), we do not believe that Ms. Angel-Ramos has established a violation of her due process rights. Ms. Angel-Ramos claims that, if the IJ had resolved her case sooner, the precedent the IJ applied would have been different and would have supported a resolution of her application in her favor. We note first that, initially, the continuance of Ms. Angel-Ramos' case was in response to several motions she filed. We also recognize that a court or agency "should 'apply the law in effect at the time it renders its decision.'" Landgraf, 511 U.S. at 273 (quoting Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 711 (1974)). Because the length of time of the continuation of Ms. Angel-Ramos' case was not, under the circumstances here, unreasonable and because the IJ applied the law in effect at the time it rendered its decision, we hold that her due process rights were not violated./5

   We also believe that Ms. Angel-Ramos has not established a violation of the Equal Protection Clause. NACARA sec. 203(a)(1) states that the stop time rule should apply to pending deportation proceedings, but it then exempts certain classes of aliens from the application of that rule./6 Mexicans are not one of the classes of aliens exempt from the application of the stop time rule. Ms. Angel-Ramos contends that there is no reason or justification for making a

distinction between different classes of aliens. The decision of Congress to designate certain classes of aliens, however, is "'a fundamental sovereign attribute exercised by the Government's political departments [and is] largely immune from judicial control.'" Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Shaughnessy v. Mezei, 345 U.S. 206, 210 (1953)). Moreover, Congress has "exceptionally broad power to determine which classes of aliens may lawfully enter the country." Id. at 794. Because Congress had the facially legitimate reason of easing the burden of administration for aliens from countries torn apart by war and oppression, see 143 Cong. Rec. S12, 261 (daily ed. Nov. 9, 1997) (statement of Sen. Abraham), we shall not review its classification of aliens. See Fiallo, 430 U.S. at 792; Appiah, 202 F.3d at 710./7

Conclusion

   For the foregoing reasons, the decision of the BIA is affirmed.

AFFIRMED


/1 At the time that Ms. Angel-Ramos applied for a suspension of deportation, the governing statute stated that the Attorney General, in her discretion, could grant suspension of deportation to an alien who is deportable if the alien (1) had been physically present in the United States for a continuous period of 7 years; (2) had been a person of good moral character during that time; and (3) had established that removal would result in extreme hardship to the alien or to her spouse, parent, or child who was a citizen of the United States or who was an alien lawfully admitted for permanent residence. See Immigration and Nationality Act sec. 244(a), 8 U.S.C. sec. 1254(a) (1994).

/2 Under sec. 240A, the requirements for an alien to remain in the United States, that is, the requirements for the cancellation of removal, are that she has resided continuously in the United States for 10 years, that she is of good moral character, that she has not committed any of a number of specified offenses, and that she or her spouse, parent or child would suffer "exceptional and extremely unusual hardship." IIRIRA sec. 304(a), INA sec. 240A(d), 8 U.S.C. sec. 1229b(b)(1).

/3 IIRIRA sec. 309(c)(5) states as follows:

(5)  TRANSITIONAL RULE WITH REGARD TO SUSPENSION OF DEPORTATION.--Paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence

or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

IIRIRA, Pub. L. No. 104-208, sec. 309(c)(5), 110 Stat. 3009, 3009-627 (1996).
/4 The full text of the amendment reads as follows:

   (1) IN GENERAL.--Section 309(c)(5) of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (Public Law 104-208; division C; 110 Stat. 3009-627) is amended to read as follows:

(5) TRANSITIONAL RULES WITH REGARD TO SUSPENSION OF DEPORTATION.--

(A)  IN GENERAL.--Subject to subparagraphs (B) and (C), paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to orders to show cause (including those referred to in section 242B (a)(1) of the Immigration and Nationality Act, as in effect before the title III-A effective date), issued before, on, or after the date of the enactment of this Act.

NACARA, Pub. L. No. 105-100, sec. 203(a), 111 Stat. 2160, 2196-2198 (1998).

/5 We also note that, even under INA sec. 244, the law applicable before the IIRIRA amendments, Ms. Angel-Ramos would not be eligible for relief. INA sec. 244 allowed an alien to calculate her continuous physical presence from the time of her entry into the United States until the date she filed her application for suspension of deportation.

   Ms. Angel-Ramos alleges that she entered the United States on August 1, 1989. She filed her application for suspension of deportation on May 13, 1996. Because she has fewer than 7 years of continuous physical presence between those two dates, even under the old law of INA sec. 244, she would not be eligible for suspension of deportation. Moreover, in Ms. Angel-Ramos' case, unlike in Batanic v. INS, 12 F.3d 662 (7th Cir. 1993), "there [is] no evidence that a procedural defect worked to deprive [Ms. Angel-Ramos] of a specific statutory right." Tamas-Mercea v. Reno, No. 99-3155, 2000 WL 1036451 (7th Cir. July 28, 2000). Therefore, her right to due process has not been denied by the delay.

/6 To show the consideration Congress gave to determining which classes of aliens to exempt from the application of the stop time rule, we set forth the applicable provision in full:

(C) SPECIAL RULE FOR CERTAIN ALIENS GRANTED
TEMPORARY PROTECTION FROM DEPORTATION.--

(i) IN GENERAL.--For purposes of calculating the
period of continuous physical presence[, the stop
time rule] shall not apply in the case of an
alien, regardless of whether the alien is in
exclusion or deportation proceedings before the
title III-A effective date, who has not been
convicted at any time of an aggravated felony (as
defined in section 101(a) of the Immigration and
Nationality Act) and--

(I) was not apprehended after December 19, 1990,
at the time of entry, and is--

(aa)  a Salvadoran national who first entered the
United States on or before September 19, 1990,
and who registered for benefits pursuant to the
settlement agreement in American Baptist
Churches, et al. v. Thornburgh (ABC), 760 F.
Supp. 796 (N.D. Cal. 1991) on or before October
31, 1991, or applied for temporary protected
status on or before October 31, 1991; or

(bb)  a Guatemalan national who first entered the
United States on or before October 1, 1990, and
who registered for benefits pursuant to such
settlement agreement on or before December 31,
1991;

(II)  is a Guatemalan or Salvadoran national who
filed an application for asylum with the
Immigration and Naturalization Service on or
before April 1, 1990;

(III)  is the spouse or child (as defined in
section 101(b)(1) of the Immigration and
Nationality Act) of an individual, at the time a
decision is rendered to suspend the deportation,
or cancel the removal, of such individual, if the
individual has been determined to be described in
this clause (excluding this subclause and
subclause (IV));

(IV)  is the unmarried son or daughter of an
alien parent, at the time a decision is rendered
to suspend the deportation, or cancel the
removal, of such alien parent, if--

(aa)  the alien parent has been determined to be
described in this clause (excluding this
subclause and subclause (III)); and

(bb)  in the case of a son or daughter who is 21
years of age or older at the time such decision
is rendered, the son or daughter entered the
United States on or before October 1, 1990; or

(V) is an alien who entered the United States on

or before December 31, 1990, who filed an application for asylum on or before December 31, 1991, and who, at the time of filing such application, was a national of the Soviet Union, Russia, any republic of the former Soviet Union, Latvia, Estonia, Lithuania, Poland, Czechoslovakia, Romania, Hungary, Bulgaria, Albania, East Germany, Yugoslavia, or any state of the former Yugoslavia.

(ii) LIMITATION ON JUDICIAL REVIEW.--A determination by the Attorney General as to whether an alien satisfies the requirements of this clause (i) is final and shall not be subject to review by any court. Nothing in the preceding sentence shall be construed as limiting the application of section 242(a)(2)(B) of the Immigration and Nationality Act (as in effect after the title III-A effective date) to other eligibility determinations pertaining to discretionary relief under this Act.

NACARA sec. 203(a)(1), 111 Stat. 2160, 2196-98.

/7 Ms. Angel-Ramos also claims that this case should be remanded to the BIA in light of a memorandum issued by the General Counsel of the INS on December 7, 1999. This memorandum explains that a proposed regulation allows the Attorney General to convert certain deportation proceedings into removal proceedings.

The group of individuals covered by the regulation, according to the memorandum, includes any alien who (1) is not a lawful permanent resident; (2) would be statutorily eligible for suspension of deportation under former INA sec. 244 but for the stop time provision in INA sec. 240A(d), which means that the alien is in deportation proceedings (that is, not subject to a final administrative order), is otherwise statutorily eligible for suspension of deportation (e.g., continuous physical presence and good moral character), and has not been denied suspension of deportation for another reason; and (3) is statutorily eligible for cancellation of removal under sec. 240A, which requires that the alien has at least 10 years of continuous physical presence in the United States, has been a person of good moral character during that time, has not been convicted of any of several specified offenses, has a qualifying relative, and is not precluded by the criminal offense stop time rule in INA sec. 240A(d)(1).

According to the memorandum, if an alien meets these requirements, the INS generally should agree to the administrative closing of an alien's proceeding before an IJ. Ms. Angel-Ramos contends that she falls within that group listed by the

memorandum and that her case therefore should be remanded to the BIA for administrative closure. As the INS points out, however, to be eligible for such relief, Ms. Angel-Ramos may not be subject to a final administrative order, which she is. Although a proceeding that is reopened for an independent reason may be administratively closed under this memorandum, the memorandum does not anticipate reopening a proceeding solely for the purpose of administrative closure. Therefore, if we were to remand Ms. Angel-Ramos' case to the BIA for an independent reason, she could be eligible for relief. Because we do not do so, we cannot remand solely for this reason.

Moreover, we also note that Ms. Angel-Ramos would not meet the requisite 7 years of continuous presence under INA sec. 244 because she allegedly entered the United States on August 1, 1989, which is less than 7 years before she filed her application for suspension of deportation on May 13, 1996.