In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4254

ARBEN SHERIFI,

Petitioner,

v.

IMMIGRATION & NATURALIZATION SERVICE,

Respondent.

Petition for Review of an Order of the
Board of Immigration Appeals

ARGUED SEPTEMBER 8, 2000--DECIDED August 1, 2001

Before FLAUM, Chief Judge, POSNER and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.  We are presented here with an issue of first impression regarding the applicability of Section 203 of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") to an alien in exclusion proceedings. We agree with the BIA that Arben Sherifi is not eligible for suspension of deportation because, among other reasons, he was in exclusion proceedings before the effective date of the law and does not fit under either of the exceptions to the general rule that the new rules do not apply in the case of an alien who is in exclusion or deportation proceedings before that date.

I.

Arben Sherifi is a citizen of Macedonia. He attempted to enter the United States on June 28, 1990 at O'Hare International Airport in Chicago. He told INS officials at the airport that he wished to apply for asylum. The INS allowed him to enter and placed him in exclusion proceedings. On July 10, 1990, he admitted the charges of inadmissibility against him at a hearing before an immigration judge. Sherifi filed an application for asylum before December 31, 1990, and also requested withholding of deportation. On February 4, 1991, the immigration judge issued an oral ruling finding that

Sherifi was excludable from the United States based on his own admissions. The judge denied the application for asylum and withholding of deportation and ordered Sherifi excluded and deported. The Board of Immigration Appeals affirmed this decision on June 30, 1994.

For reasons that do not appear in the record, the INS failed to enforce its order against Sherifi. He remained in the United States, married a U.S. citizen and fathered a U.S. citizen child. In the meantime, Congress passed NACARA on November 19, 1997, which amended the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Sherifi filed a motion to reopen his exclusion proceedings on August 19, 1998, hoping to find relief under NACARA's provisions. The immigration judge denied the motion to reopen, finding that NACARA did not change the statutory or regulatory bars to suspension of deportation. Because suspension of deportation was not available to aliens in exclusion proceedings before the passage of NACARA, it was not available to Sherifi, according to the immigration judge. The BIA agreed that suspension of deportation was not available to aliens placed in exclusion proceedings prior to April 1, 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Specifically, the BIA held:

[N]one of the transition rules dealing with suspension of deportation override the general transition rule that subjects a person placed into exclusion proceedings prior to April 1, 1997, to the rules governing exclusion that were in place before the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . . was enacted. Included among those rules is the long-standing principle that persons in exclusion proceedings are ineligible to apply for suspension of deportation.

Decision of the BIA, In re Sherifi, Dec. 6, 1999, at 2 (internal citations omitted). Because Sherifi was in exclusion proceedings before April 1, 1997, he was ineligible to apply for suspension of deportation, and the BIA dismissed his appeal. Sherifi appeals from the BIA's decision.

II.

On appeal, Sherifi maintains that NACARA changed the landscape for aliens in exclusion proceedings, rendering them eligible to apply for suspension of deportation. As evidence that Congress intended this result, Sherifi points to Section 203(a)(1) of NACARA which provides, in relevant part:

(C) Special rule for certain aliens granted temporary protection from deportation.--

(i)  IN GENERAL.--For purposes of calculating the period of continuous physical presence under section 244(a) of the Immigration and Nationality Act (as in effect before the title III-A effective date) or section 240A of such Act (as in effect after the title III-A effective date), subparagraph (A) of this paragraph and paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act shall not apply in the case of an alien, regardless of whether the alien is in exclusion or deportation proceedings before the title III-A effective date, who has not been convicted at any time of an aggravated felony (as defined in section 101(a) of the Immigration and Nationality Act) and-
- . . . .

(V) is an alien who entered the United States on or before December 31, 1990, who filed an application for asylum on or before December 31, 1991, and who, at the time of filing such application, was a national of the Soviet Union, Russia, any republic of the former Soviet Union, Latvia, Estonia, Lithuania, Poland, Czechoslovakia, Romania, Hungary, Bulgaria, Albania, East Germany, Yugoslavia, or any state of the former Yugoslavia.

NACARA sec. 203(a)(1), 111 Stat. 2160, 2196-98. Sherifi argues that Congress' intent to permit the relief of suspension of deportation to an alien in exclusion proceedings is clear from the phrase "whether the alien is in exclusion or deportation proceedings." According to Sherifi, the reference to exclusion proceedings would be rendered superfluous if Congress had not meant for NACARA to apply to persons in exclusion proceedings. Sherifi maintains that the

immi-gration judge therefore erred in denying his motion to reopen.

A.

In its brief before this Court, the INS countered that suspension of deportation is available only to aliens in deportation proceedings. According to the INS, excludable aliens were never eligible for suspension of deportation, and nothing in NACARA changed that well-established rule. At oral argument before this Court, the INS shifted its argument slightly and relied primarily on the inapplicability of NACARA to persons in exclusion proceedings before April 1, 1997, with certain exceptions that are not available to Sherifi. The INS asserts (and Sherifi does not disagree) that the title III-A effective date referred to in the statute is April 1, 1997. Under section 309(c)(1) of IIRIRA as amended by NACARA, the INS explains that the general rule is that the new provisions of NACARA regarding cancellation of removal do not apply unless the case commenced after April 1, 1997. The INS posits that there are two limited exceptions to this general rule, contained in sections 309(c)(2) and 309(c)(3), which were not affected by the NACARA amendments. Congress provided in 309(c)(2) that in either deportation or exclusion proceedings, where no evidentiary hearing had yet been held, the Attorney General could opt to apply all of the provisions of IIRIRA retroactively, including cancellation of removal under the new section 240A. Section 309(c)(3) allowed a second exception: the Attorney General could terminate the original proceedings and start over with a Notice to Appear at a removal proceeding if no final administrative order had been entered. Because Sherifi had an evidentiary hearing and because a final administrative order had been entered in his case, neither of these exceptions apply to him, according to the INS, and he is therefore subject to the general rule that the new provisions regarding cancellation of removal do not apply unless the case commenced after April 1, 1997. Because Sherifi's case commenced on June 29, 1990, the new cancellation ofremoval provisions are not available to him, and the INS contends that the immigration judge was thus correct in denying his motion to reopen.

Sherifi's only response to the effective date limitation posed by the INS is that section 203 does not merely modify section 309, but creates a new right for persons in exclusion proceedings to benefit from NACARA. Sherifi repeats his contention that the INS' interpretation of the statute gives no meaning to the words "whether the alien is in exclusion or deportation proceedings." According to Sherifi, the only limitations to the applicability of NACARA are that the alien must have entered the United States before December 31, 1990, must have filed an application for asylum by December 31, 1991, and must be from one of the designated countries in Eastern Europe listed in the statute. Because he fulfilled all of these conditions, he believes he is entitled to file a petition to reopen.

B.

We defer to the BIA's interpretation of the immigration laws. Angel-Ramos v. Reno, 227 F.3d 942, 947 (7th Cir. 2000). The BIA ruled here that NACARA did not change the longstanding principle that persons in exclusion proceedings prior to April 1, 1997 are ineligible to apply for suspension of deportation. The statute supports this conclusion. Section 309 of IIRIRA, as amended by NACARA, provides in relevant part:

(c) Transition for certain aliens.--

(1) General rule that new rules do not apply.-- Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before the title III-A effective date--

(A) the amendments made by this subtitle shall not apply, and

(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

The "succeeding provisions" referenced in the general rule provide the two exceptions we described earlier. First, if no evidentiary hearing had been held as of April 1, 1997, the attorney general could elect to apply the new procedures

after providing notice of this election to the alien. Second, if there had been no final administrative decision, the attorney general could elect to terminate and reinitiate the proceedings using the new procedures. Sherifi concedes the immigration judge conducted an evidentiary hearing for him, and also concedes that he was subject to a final administrative decision. Thus, he is subject to the general rule that the IIRIRA procedures, as amended by NACARA, do not apply to him. We therefore agree that he is not entitled to the relief he seeks.

We disagree that this interpretation gives no meaning to the words "whether the alien is in exclusion or deportation proceedings" contained in section 309(c)(5)(C)(1). We quoted this provision above, which relates to the "stop time" rule created by IIRIRA. Understanding the purpose of this phrase requires a brief history of the stop time rule. Prior to the passage of IIRIRA, the attorney general could, in her discretion, suspend deportation for an alien who applied for that relief so long as the alien met certain conditions. For example, the alien was required to demonstrate that he or she had been continuously present in the United States for seven years preceding the date of the application, was of good moral character, and that the alien's deportation would result in extreme hardship to the alien, the alien's U.S. citizen (or permanent resident) spouse, parent or child. 8 U.S.C. sec. 1254(a)(1) (1994) (repealed September 30, 1996). IIRIRA repealed that statute and replaced it with a similar provision permitting the attorney general to grant lawful permanent resident status to certain deportable aliens. IIRIRA differed from the prior law in several ways. First, it eliminated the distinction between exclusion and deportation proceedings, instead creating more generic removal proceedings. Second, it heightened the standard for hardship that an alien must demonstrate and narrowed the class of persons for whom the alien's deportation would prove a hardship. Third, it increased the time required for continuous presence to ten years and created a "stop time" rule. The stop time rule provided that the period of continuous presence in the United States would be deemed to end when the

alien was served with a notice to appear, or when the alien committed certain offenses. Angel-Ramos, 227 F.3d at 945. Before IIRIRA, deportation proceedings were commenced with orders to show cause, and exclusion proceedings were commenced with a "notice to alien detained for hearing." "Notice to appear" was a new term that caused some confusion. NACARA was passed at least in part to resolve the confusion regarding whether the stop time rule was to apply to deportation or exclusion cases that were pending at the time IIRIRA became effective. We recently held that, under NACARA, the stop time rule applied to orders to show cause and applications for suspension of deportation pending at the time IIRIRA was enacted. Angel-Ramos, 227 F.3d at 947.

Congress created some exceptions to that rule, however, for certain aliens who were in pending proceedings at the time IIRIRA went into effect. First, in cases where the attorney general elected to terminate and reinitiate proceedings under section 309(c)(3), the stop time rule would not apply to an order to show cause issued before April 1, 1997. See Section 309(c)(5)(B). Second, the stop time rule would also not apply in cases where the alien was in exclusion or deportation proceedings before April 1, 1997, where the alien had not been convicted at any time of aggravated felony, where the alien entered the U.S. before December 31, 1990 and filed an application for asylum before December 31, 1991, and where the alien was a national of certain countries. See Section 309(c)(5)(C)(i)(V). This is the provision Sherifi relies on as creating relief for him under NACARA.

Although Sherifi meets the bare requirements for section 309(c)(5)(C)(i)(V), the section cannot be read in isolation. It merely suspends operation of the stop time rule for certain aliens. Indeed, by its own terms, it is limited to the purpose of calculating the period of continuous physical presence in the United States. Because Sherifi had already received an evidentiary hearing and had a final administrative order issued in his case, he was not eligible for any relief under NACARA or IIRIRA. Theoretically, there are aliens to whom the phrase "whether

the alien is in exclusion or deportation proceedings" applies. In addition to fulfilling the same requirements as Sherifi under section 309(c)(5)(C)(i)(V), the alien would not have received an evidentiary hearing, or would not have a final administrative order entered. Although not eligible for suspension of deportation, an alien in exclusion proceedings who meets all those conditions might be able to begin asylum proceedings over again, if the attorney general elected that option. Another purpose of the phrase would be for aliens who were initially improperly placed in exclusion proceedings, and were later properly placed in deportation proceedings. Upon the correction, an alien otherwise meeting the criteria would then become eligible for suspension of deportation and would be able to count the time spent in exclusion proceedings (as well as the time spent in deportation proceedings) in calculating the period of continuous physical presence in the United States. Thus, there is a purpose for the appearance of these words in the NACARA provisions. The purpose is not to create a remedy of suspension of deportation for persons in exclusion proceedings, but rather to allow certain aliens to begin their proceedings anew without being subject to the stop time rule.

Because Sherifi is not entitled to suspension of deportation, the BIA was correct to dismiss his appeal. Nothing in NACARA changed the well-established rule that aliens in exclusion proceedings are not entitled to suspension of deportation. See Matter of Torres, 19 I&N Dec. 371 (BIA 1986).

AFFIRMED.