In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3138

Janusz Buzdygan,

Petitioner,

v.

Immigration and Naturalization Service,

Respondent.

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A29 421 290

Argued March 28, 2001--Decided August 9, 2001


  Before Ripple, Kanne, and Evans, Circuit
Judges.

  Kanne, Circuit Judge.  Janusz Buzdygan
appeals the decision of the Board of
Immigration Appeals ("BIA") denying his
motion to remand his case to the
Immigration Court to allow him to apply
for relief pursuant to the Nicaraguan
Adjustment and Central American Relief
Act of 1997 ("NACARA"). Buzdygan contends
that he is eligible to have his case
reopened in order to apply for relief
under NACARA. We find that Buzdygan has
not met the requirements necessary to be
eligible to have his case reopened
pursuant to NACARA, and therefore, we
affirm the decision of the Board of
Immigration Appeals denying Buzdygan's
motion.

I.  History

  Buzdygan is a citizen and native of
Poland. He first came to the United
States as a visitor in May 1985, and was
permitted to remain in the United States
until November 24, 1988. In October of
1988, Buzdygan filed for asylum. The
Immigration and Naturalization Service
(the "INS") denied this request. In
February of 1997, the INS served Buzdygan
with an Order to Show Cause, charging
that, pursuant to sec. 241(a)(1)(B) of
the Immigration and Nationality Act (the

"INA"), 8 U.S.C. sec. 1101 et seq., Buzdygan was deportable as a non-immigrant who remained in the United States for a period of time exceeding that which had been previously authorized. See 8 U.S.C. sec. 1251(a)(1)(B) (current version at 8 U.S.C. sec. 1227(a)(1)(B)).

Buzdygan submitted an application for suspension of deportation at a hearing before an immigration judge in October of 1997. At that time, Buzdygan could have been granted this form of discretionary relief under sec. 244(a)(1) of the INA if he: (1) had been "physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application;" (2) displayed that "he was and is a person of good moral character;" and (3) demonstrated that deportation would "result in extreme hardship to [him] or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. sec. 1254(a) (repealed 1996). It was undisputed that Buzdygan was continuously present in the United States for approximately twelve years and that he was a person of good moral character. The immigration judge concluded, however, that Buzdygan had not established that his being deported to Poland would subject him to extreme hardship, and therefore, the immigration judge denied his application for suspension of deportation.

Buzdygan appealed the immigration judge's ruling to the Board of Immigration Appeals. While his appeal was pending before the BIA, Buzdygan filed a motion to remand his case to the Immigration Court in order to reopen his deportation hearing pursuant to sec. 203(c) of NACARA, Pub. L. No. 105-100, 111 Stat. 2160, 2193-2201 (1997), amended by Pub. L. No. 105-139, 111 Stat. 2644 (1997). The BIA denied this motion, agreeing with the INS's contention that Buzdygan had "already had an opportunity to apply for suspension of deportation, and therefore, the [NACARA] amendments in question have not rendered him eligible for a form of relief which was previously available to him." In re Buzdygan (BIA July 28, 2000). Buzdygan now appeals.

II.  Analysis

We review the BIA's interpretation of the INA de novo; however, its interpretation is entitled to deference. See Bazan-Reyes v. INS, Nos. 99-3861, 99-3917, 99-3922, 2001 WL 748157, at *3 (7th Cir. July 5, 2001). In 1996, significant changes were made to the INA by the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996). After the passage of IIRIRA, deportation proceedings are referred to as removal proceedings and aliens seeking discretionary relief now apply for cancellation of re-moval instead of suspension of deportation./1 See 8 U.S.C. sec. 1229b. Additionally, IIRIRA provided that removal proceedings against an alien would be initiated by serving that individual with a Notice to Appear and that the INS would no longer initiate proceedings against an alien by serving that alien with an Order to Show Cause. See 8 U.S.C. sec. 1229(a)(1). Furthermore, IIRIRA implemented a new method for calculating the period of time an alien has been present in the United States. The "stop time" rule provides that the period of time to be counted towards the determination of whether an individual has met the continuous physical presence requirement necessary to be eligible for relief from deportation [will end] when the alien is served with a Notice to Appear. See 8 U.S.C. sec. 1229b(d)(1).

We explained in Angel-Ramos v. Reno, 227 F.3d 942 (7th Cir. 2000), that "[a]lthough most of the[se] IIRIRA amend ments do not apply to aliens [like Buzdygan], who were placed in deportation proceedings before the effective date of the Act (April 1, 1997) . . . the amendments did create special transitional rules for those aliens in proceedings as of the Act's effective date." Id. at 945. Among these rules was sec. 309(c)(5), which explained that the "stop time" rule would apply to Notices to Appear issued before, on, or after the effective date of the Act. See id. As indicated above, however, the INS did not use Notices to Appear prior to the enactment of IIRIRA. While the BIA and the Attorney General attempted to address this ambiguity, see Matter of  N-J-B, Int. Dec. 3415, 1999 WL 1390344 (BIA 1997; Atty Gen. 1997, 1999), sec.

203(a)(1) of NACARA clarified the rule by explaining that the stop time rule for determining an alien's continuous physical presence "shall apply to orders to show cause issued before, on, or after the effective date of the enactment of this Act." Id.; see also Angel-Ramos, 227 F.3d at 947 ("Because orders to show cause do not survive IIRIRA, NACARA sec. 203(a)(1) clarifies that the stop time rule applies to pending applications for suspension of deportation in which orders to show cause had been issued."). NACARA also exempted certain groups of aliens from the stop time rule, including Polish nationals. See id.

Finally, sec. 203(c) of NACARA amended sec. 309 of IIRIRA to permit aliens who became eligible for cancellation of removal or suspension of deportation as a result of the enactment of NACARA to file one motion to reopen removal or deportation proceedings in order to apply for cancellation or suspension. See id. Buzdygan relies on this provision in challenging the BIA's denial of his motion to remand. He contends that, regardless of his previous application for suspension of deportation, he is eligible to have his proceedings reopened in order to apply for a cancellation of removal pursuant to sec. 203(c) of NACARA. We do not agree.

Section 3.43 of Title 8 of the Code of Federal Regulations explains that an alien's motion to reopen proceedings pursuant to NACARA must establish that the individual meets four specific requirements./2 While Buzdygan meets three of these four requirements, we find that he cannot establish that he "was or would be" rendered ineligible to be granted suspension of deportation because of the implementation and application of the stop time rule. 8 C.F.R. sec. 3.43(b)(2). Regardless of the fact that sec. 203(a)(1) exempts Buzdygan, a Polish national, from having the stop time rule applied to his case, it is clear that the implementation of the stop time rule had no affect on Buzdygan's ability to satisfy the seven-year continuous presence requirement. It is undisputed that Buzdygan has been continuously present in the United States since May of 1985. Thus, it was of no consequence whether the period of time for which Buzdygan was continuously present in the

United States was measured from when he was served with an Order to Show Cause in February of 1997, pursuant to the stop time rule, or from when he applied for a suspension of deportation at his hearing before the immigration judge in October of 1997, pursuant to the pre-IIRIRA rule. Therefore, because Buzdygan was not rendered ineligible to be granted suspension of deportation because of the stop time rule, we agree with the BIA's conclusion that sec. 203(c) of NACARA does not provide him with an additional avenue for seeking relief.

III.  Conclusion

   For the aforementioned reasons, we affirm the BIA's denial of Buzdygan's motion to remand.

FOOTNOTES

/1 To qualify for cancellation of removal an alien must be placed in proceedings after April 1, 1997. Additionally, such an individual must: (1) be continuously present for ten years prior to being served with a Notice to Appear; (2) display good moral character; and (3) demonstrate that removal would "result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. sec. 1229b(b)(1).

/2 Section 3.43(b) provides that a motion to reopen pursuant to NACARA must establish that an alien:

(1) Is prima facie eligible for suspension of deportation pursuant to section 244(a) of the INA (as in effect prior to April 1, 1997) or the special rule for cancellation of removal pursuant to section 309(f) of IIRIRA, as amended by section 203(b) of NACARA;

(2) Was or would be ineligible:

(i) For suspension of deportation by operation of section 309(c)(5) of IIRIRA (as in effect prior to November 19, 1997); or

(ii)  For cancellation of removal pursuant to section 240A of the INA, but for operation of section 309(f) of IIRIRA, as amended by section 203(b) of NACARA;

(3) Has not been convicted at any time of an aggravated felony; and

(4) Is within one of the following six classes:

. . .

(iv)  An alien who:

(A) Entered the United States on or before December 31, 1990;

(B) Applied for asylum on or before December 31, 1991; and

(C) At the time of filing such application for asylum was a national of . . . Poland . . . .