**Ruth E. OBAZEE, Petitioner,**

v.

**John D. ASHCROFT, Respondent.**

No. 02–3416.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 2003.

Decided Oct. 24, 2003.

Ralph M. Schelly, Chicago, IL, for Petitioner.

George P. Katsivalis, Department of Homeland Security, Office of the District Counsel, Chicago, IL, Robbin K. Blaya, Department of Justice, Washington, DC, for Respondent.

Before MANION, EVANS, and WILLIAMS, Circuit Judges.

### ORDER

Ruth Ehi Obazee appeals from the order of the Board of Immigration Appeals (BIA) affirming, without opinion, the decision of the Immigration Judge (IJ) to deny her application for asylum. We affirm.

Obazee is a Nigerian citizen who entered the United States without inspection in December 1993. On July 2, 1996, the former Immigration and Nationalization Service (INS) issued an order to show cause charging Obazee with deportability under 8 U.S.C. § 1251(a)(1)(B) for having entered the United States without inspection. At a hearing before the IJ, Obazee conceded deportability, but requested asylum and withholding of deportation. She based her request upon her alleged fear that members of the Reform Ogboni Fraternity (ROF), to which she belonged from 1976 through 1981, would persecute her for leaving the ROF, and upon her fear that her daughter,[1] who is a United States citizen, would be forced to undergo female genital mutilation (FGM) if returned to Nigeria.

As to the claim of persecution, Obazee testified before the IJ that the ROF had forced her to eat a human body part as part of her initiation, compelled her to engage in a ritual involving cannibalism every week for five years, kidnapped her after she left the group, and would harm her if she returned to Nigeria. She also proffered an unsigned letter that, she maintained, the ROF had sent her. The letter, dated February 13, 1993, stated: "You should know that you can't abandon us now. The same fate awaits you." Af-

---

1. At oral argument, Obazee's counsel contended that Obazee actually has three minor daughters who are U.S. citizens. But the record only reflects that Obazee has one such daughter, and we may not reverse based on evidence outside of the administrative record. *State of New York v. EPA*, 133 F.3d 987, 993 (7th Cir.1998).

ter assessing scholarly reports to the effect that the ROF did not engage in cannibalism and was tolerant, the IJ concluded that Obazee's story was "highly implausible." The IJ also found the letter to be unreliable because the threat was vague and the author unidentified. Ultimately, the IJ concluded that Obazee did not suffer a history of persecution, or well-founded fear of future persecution, from the ROF and held that she was ineligible for relief on this ground.

Regarding Obazee's claim that her daughter would be exposed to FGM if forced to return to Nigeria, Obazee testified that she herself had endured such mutilation, and that she feared that her daughter would be forced to suffer the same fate if she took her to Nigeria. At the IJ's request, evidence from the State Department regarding FGM was entered into the record. This evidence showed that, although the Nigerian government has banned the practice, it has done little to enforce the ban, and that FGM is still prevalent in southern Nigeria, where 50 to 60 percent of the women have been subject to it. The IJ nonetheless denied relief on the ground that Obazee "cannot claim the possible mistreatment of a family member as the basis of her claim for asylum."

Obazee then appealed to the BIA, which affirmed the IJ without opinion under the streamlined procedure of 8 C.F.R. § 3.1(a)(7)(ii)(A)-(B). Obazee appeals to this court, arguing that the IJ incorrectly denied her claim for asylum, and that the BIA's streamlined process was invalid.

Because the Board affirmed the results of the IJ's decision, we review the IJ's opinion and will uphold the determination that Obazee was not eligible for asylum "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Krouchevski v. Ashcroft*, 344 F.3d 670, 671 (7th Cir.2003). *See generally Moin v. Ashcroft*, 335 F.3d 415,

418 (5th Cir.2003) (explaining why the substantial evidence standard applies to cases in which the INS employed its streamlined procedure). To show that she is eligible for asylum, Obazee has to prove that she is unwilling to return to Nigeria because she has a well-founded fear of persecution. *Dobrican v. INS*, 77 F.3d 164, 167 (7th Cir.1996).

We turn first to Obazee's alleged history, and fear, of persecution from the ROF. As discussed above, Obazee's testimony was that, among other things, the ROF had forced her to eat a human body part as part of her initiation, forced her to engage in a ritual involving cannibalism every week for five years, kidnapped her after she left the group, and would harm her if she returned to Nigeria. She also provided an unsigned letter, supposedly from the ROF, with language that could be construed as threatening. Although Obazee had received numerous continuances from the IJ, that was the totality of the evidence that she presented.

█ The IJ, however, assessed scholarly reports to the effect that the ROF did not engage in cannibalism and was tolerant. He also noted that the letter Obazee presented was unsigned, vague, and did not even purport to identify the author. Therefore, the IJ denied asylum, finding that Obazee's story was "highly implausible" and that she had not established a history, or well-founded fear of future, persecution from the ROF. We could reverse the IJ's decision on this point only if the evidence were "such that a reasonable fact finder would be compelled to reach an opposite conclusion." *Krouchevski*, 344 F.3d 670, 671. On the state of the record, we hold that a reasonable person would not have been compelled to credit Obazee's uncorroborated and fantastic story of serial cannibalism, kidnapping, etc., and therefore a reasonable IJ would not have been

compelled to grant asylum. We therefore affirm as to this issue.

We turn next to Obazee's argument that her daughter is likely to suffer FGM in Nigeria. The IJ rejected this basis for asylum because he reasoned that this circuit has rejected the theory of derivative persecution. Although many cases state that hardship to the petitioner's non-citizen family is irrelevant, those cases generally do not address what, according to Obazee, confronts the court here: a young child who is a U.S. citizen and who would be constructively deported by having to follow her mother into exile. *See Salameda v. INS*, 70 F.3d 447, 451 (7th Cir.1995) (collecting cases). We have suggested that, in such circumstances, the INS should, in its discretion, consider the impact and alternatives facing the minor child who is a United States citizen. *Cf. Nwaokolo v. INS*, 314 F.3d 303, 307–10 (7th Cir.2002) (holding that the INS was obliged at least to consider, under an alien's motion to reopen her deportation proceedings, the effect that a deportation would have on that alien's four-year-old citizen-daughter who would effectively be deported with her mother to Nigeria and might face FGM); *see also Salameda*, 70 F.3d at 451 (reasoning that, in similar circumstances, the parent's lawyer might be entitled to ask for relief on the minor's behalf).

■ It is certainly understandable why Obazee would try to append to her citizen-daughter's right to remain in the United States. Try as she might, she is not entitled to asylum. Obazee points to no evidence in the record that would have allowed the IJ to find that deporting Obazee would constructively deport Obazee's daughter as well. At oral argument, Obazee's counsel stated that the father of Obazee's daughter is a U.S. citizen. If so, one would assume that, in the event of Obazee's deportation, the daughter could remain in the United States with her father, and thus evade any risk of FGM.[2]

■ We turn finally to Obazee's argument that the streamlined procedure under which the BIA affirmed the IJ was improper. Under the streamlined procedure found in 8 C.F.R. § 3.1(a)(7)(ii)(A)-(B), the BIA may affirm without opinion in cases in which one BIA member "determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial," and that the issues on appeal are either clearly governed by precedent or not substantial.[3] Although the grounds upon which Obazee challenges the streamlined procedure are unclear, the BIA's use of the streamlined procedure did not harm Obazee. Obazee's appeal is fact-dependent and, "[s]ince we review directly the decision of the IJ when a case comes to us from the BIA pursuant to [the streamlining provision], our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not

---

**2.** At the time of Obazee's deportation hearing, the attorney general had discretion under 8 U.S.C. § 1254(a)(1) (1994) (repealed Sept. 30, 1996), to suspend deportation upon Obazee's showing that she was continuously present in the United States for seven years before the date of her application and that deportation would have resulted in extreme hardship for her U.S.-citizen daughter. *See Sherifi v. INS*, 260 F.3d 737, 741 (7th Cir.2001). Obazee,

however, could not have met the requirement of a seven-year presence.

**3.** The regulations previously cited as 8 C.F.R. §§ 3.1, 3.2 (2002) are now found at 8 C.F.R. §§ 1003.1, 1003.2 (2003), respectively. Because the parties referred to the 2002 regulations, and because the new regulations are either identical or substantially similar to the older versions, we continue to refer to the 2002 regulations.

violated." *Georgis v. Ashcroft,* 328 F.3d 962, 967 (7th Cir.2003).

AFFIRMED.