# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-2827

OCTAVIO TAPIA,

*Petitioner*,

v.

JOHN ASHCROFT, ATTORNEY GENERAL
OF THE UNITED STATES,[1]

*Respondent.*

———————

Petition for Review of an Order of
the Board of Immigration Appeals.

———————

ARGUED SEPTEMBER 17, 2003—DECIDED DECEMBER 16, 2003

———————

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Octavio Tapia is a Mexican citizen who overstayed his deadline as a pleasure visitor

———————

[1] Tapia named the Immigration and Naturalization Service (INS) as the respondent in this case. The INS no longer exists as an independent agency within the Department of Justice and is now part of the Department of Homeland Security. Because this petition for review challenges a decision of the Executive Office for Immigration Review (Board of Immigration Appeals (BIA)), which is a component of the United States Department of Justice, Attorney General John Ashcroft has been listed in the caption as the respondent. *See* 8 U.S.C. § 1252(b)(3)(A); *Dandan v. Ashcroft*, 339 F.3d 567 (7th Cir. 2003).

and was ordered deported *in absentia*. After his case was reopened and he conceded deportability, an immigration judge (IJ) denied his request for suspension of deportation by finding that he was ineligible for such relief because he had not been present in the United States for seven consecutive years. Tapia appealed to the Board of Immigration Appeals (BIA), which affirmed without opinion. On appeal, he challenges the service of the Order to Show Cause (OSC) and whether he is ineligible for suspension of deportation. Because there is substantial evidence to support the immigration court's conclusion, we deny his petition.

## I.  BACKGROUND

Octavio Tapia is a Mexican citizen who originally entered the United States in 1987 as a pleasure visitor. In February 1990, he returned to Mexico for six and a half months to visit his ailing mother in the hospital. In September 1990, he again entered the United States as a visitor for pleasure, with authorization to stay until May 1991, but he remained in the country beyond that date.

In December 1995, the INS filed in the immigration court in Chicago an Order to Show Cause why Tapia should not be deported. A copy of the order was sent to Tapia by certified mail at his last known address, and the certification receipt was signed by either Tapia's sister or cousin,[2] who lived at the residence with Tapia. The OSC indicated that a hearing was set for May 8, 1996, and when Tapia did not appear for that hearing he was ordered deported *in absentia*. On June 13, 1996, Tapia filed a motion to reopen and reconsider, arguing that he had not received notice of

---

[2]  Tapia reviewed the certified mail receipt and testified that it could be either his sister's or his cousin's signature.

the hearing and that the evidence did not support the OSC. On August 28, 1996, Tapia also submitted an application for suspension of deportation.

An IJ granted the motion to reopen in 1998,[3] and Tapia admitted the allegations in the OSC and conceded deportability. The IJ denied Tapia's request for suspension of deportation, finding that Tapia was ineligible for such relief because he had not been present in the United States for seven consecutive years. In doing so, the IJ stated that the record clearly reflected that the OSC was properly served by certified mail. Tapia appealed to the BIA, which affirmed the decision of the IJ without issuing an opinion.

## II.  ANALYSIS

We review decisions of the immigration courts to deny suspension of deportation using the substantial evidence standard. *Georgis v. Ashcroft*, 328 F.3d 962, 967 (7th Cir. 2003). We must affirm the BIA's decision if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Useinovic v. I.N.S.*, 313 F.3d 1025, 1029 (7th Cir. 2003)). When a case comes to this court on appeal following a "Affirm Without Opinion" decision by the Board under its streamlining pro-

---

[3] Tapia claims that he was harmed by the two-year delay in re-opening his deportation proceedings, but he failed to raise this before the IJ or in his brief to the BIA, so it is waived. *See, e.g.*, *Rhoa-Zamora v. I.N.S.*, 971 F.2d 26, 36 (7th Cir. 1992). Furthermore, this court has previously rejected Tapia's arguments in a substantially similar case. *See Angel-Ramos v. Reno*, 227 F.3d 942, 948 (7th Cir. 2000).

cedures, *see* 8 C.F.R. § 1003.1(a)(7), we review directly the decision of the IJ. *Georgis*, 328 F.3d at 966.[4]

A.   The Order to Show Cause Was Properly Served

The INS may serve an OSC on a respondent by certified mail sent to the respondent's last known address (with return receipt requested), if "the certified mail receipt [is] signed by the respondent or a responsible person at the respondent's address and returned to effect personal service." *Matter of Grijalva*, 21 I & N. Dec. 27, 32 (BIA 1995) (citing Immigration and Nationality Act (INA) § 242B(a)(1), 8 U.S.C. § 1252b(a)(1) (1994)); *see also Fuentes-Argueta v. I.N.S.*, 101 F.3d 867, 871 n.2 (2d Cir. 1996).[5] Here, the government introduced a certified mail

---

[4] Tapia argues that it was inappropriate for the BIA to "Affirm Without Opinion," because he raised new issues on appeal (the ones we address in this opinion) that he had not briefed before the IJ. His failure to raise these issues before the IJ entitled the BIA to reject them on appeal. *See Matter of Edwards*, 20 I & N 191, 199 n.4 (BIA 1990) (citing *Matter of Samai*, 17 I & N Dec. 242 (BIA 1980)) ("We note in passing, however, that because the respondent did not object to the entry of this document into evidence at the hearing below, it is not appropriate for him to object on appeal."). Moreover, since we review the IJ's decision when the BIA streamlines its review, "our ability to conduct a full and fair appraisal of the petitioner's case is not compromised, and the petitioner's due process rights are not violated." *Id.*; *see also Ciorba v. Aschroft*, 323 F.3d 539, 546 (7th Cir. 2003); *Albathani v. I.N.S.*, 318 F.3d 365, 377 (1st Cir. 2003).

[5] Contrary to the government's assertion, *Matter of Grijalva* did not broadly hold that there was "no requirement that the certified mail receipt be signed so long as there was proof of attempted delivery." Rather, in *Matter of Grijalva,* the BIA held that for "notices of deportation proceedings," there is "no requirement

(continued...)

receipt for the OSC that it had sent to Tapia's last known address, where he lived with his adult sister and cousin, and which contained evidence that it was signed by Tapia's sister. Tapia contends that the government failed to establish that it was his sister who signed the receipt because it did not call her to testify or offer a handwriting expert to verify her signature. He also argues that the government has not shown that the person who signed the receipt was "responsible." However, Tapia conceded before the IJ, and acknowledges in his brief, that the signature could be either his sister's or his cousin's, and while the government offered no further proof that it was his sister's signature, Tapia did not call her to testify that it was not. Similarly, he makes no argument (much less provides any evidence) that either his sister or his cousin were not "responsible persons" who could sign the certified mail receipt. Under these circumstances, we find there is substantial evidence to support the IJ's conclusion that the OSC was properly served.

## B.   Suspension of Deportation

Under the statutes in effect at the time Tapia applied for suspension of deportation, the Attorney General had the discretion to grant suspension of deportation to a deportable alien if the alien: (1) had been physically present for a continuous period of seven years; (2) was of good moral character during that time; and (3) had established that

---

[5]  (...continued)
that the certified mail return receipt be signed by the alien or a responsible person at his address to effect service." 21 I & N. Dec. at 34 (citing INA § 242B(c)(1), (2), 8 U.S.C. § 1252b(c)(1), (2) (1994)). However, the BIA, also explicitly held that this "only pertains to [notices of deportation] and not to Orders to Show Cause." *Id.* at 33.

removal would result in extreme hardship to the alien, his spouse, child, or parent who was a United States citizen or lawful resident. *See* INA § 244(a), 8 U.S.C. § 1254 (1994); *Angel-Ramos v. Reno*, 227 F.3d 942, 945 n.1 (7th Cir. 2000). Under INA § 240(d)(2), "an alien shall be considered to have failed to maintain continuous physical presence . . . if the alien has departed from the United States for any period in excess of 90 days, or for any periods in the aggregate exceeding 180 days." 8 U.S.C. § 1229b(d)(2). Five years before the OSC was served, Tapia departed from the United States for six and a half months to return to Mexico. Because this trip was for more than 90 days, Tapia failed to maintain continuous presence in the United States for the seven years preceding service of the OSC, and the IJ correctly concluded that he was ineligible for suspension of deportation. *See Angel-Ramos*, 227 F.3d at 946-48.

Tapia acknowledges these rules but argues that his case is governed by rules in effect prior to Congress's passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 3009, 3009-627 (1996), in that his trip was "innocent, casual, and brief" under *Rosenberg v. Fleuti*, 374 U.S. 449 (1963). The "*Fleuti* Doctrine"—that an "innocent, casual, and brief" departure from this country does not constitute a break in an alien's physical presence—has been superseded by the IIRIRA.[6] The physical presence re-

---

[6] In *Fleuti*, the Court interpreted § 101(a)(13) of the Immigration and Nationality Act of 1952. Section 101(a)(13) stated that a permanent resident alien was not considered to be reentering the country (for purposes of the statute) if his or her departure from the United States "was not intended." The Court held that "an innocent, casual, and brief excursion by a resident alien outside this country's borders may not have been 'intended' as departure disruptive of his resident alien status." *Fleuti*, 374 U.S. at 463.

(continued...)

quirements under the IIRIRA does not include the "innocent, casual, and brief" standard, and instead opts for a quantitative standard—any absence outside the country for more than 90 days at a time, or 180 days in total, breaks the physical presence requirement. 8 U.S.C. § 1229b(d)(2). In *Rivera-Jimenez v. I.N.S.*, 214 F.3d 1213 (10th Cir. 2000), the Tenth Circuit reached this same conclusion. *See id.* at 1218 (holding that whether an alien's departure from the country was brief, casual, and innocent "is irrelevant . . . in light of the IIRIRA's special rules relating to continuous physical presence"); *see also Tineo v. Ashcroft*, No. 02-3636, 2003 WL 22863043, *1 (3d Cir. Dec. 4, 2003); *In re Collado-Munoz*, 21 I & N Dec. 1061, 1064 (BIA 1998) (as amended). Because there is no longer an exception for innocent, casual, and brief departures from the country, and because Tapia left the country for more than 90 days with his six-month trip to Mexico, he failed to maintain continuous physical presence in this country for seven years and is statutorily ineligible for suspension of deportation.

Tapia also argues that his time spent in deportation proceedings after (a) his receipt of the OSC in 1995 (assuming it was properly served), (b) the filing of his motion to reopen with the IJ in 1996, or (c) the actual reopening of his case in 1998, should count toward his seven years, and therefore asserts that he has been in the United States in excess of seven years since his last entry in September 1990. This court resolved this question in *Angel-Ramos*, when we held that the stop-time provisions in the IIRIRA, as amended by the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, § 203(a), 111 Stat. 2160, 2196-98 (1998), stops the time that counts toward

---

[6] (...continued)
The "brief, casual, and innocent" language was incorporated into the predecessor to the IIRIRA. *See* 8 U.S.C. § 1254(b)(2) (repealed 1997).

continuous presence once the OSC is served. 227 F.3d at 947. We also held that these provisions apply to aliens in immigration proceedings even if those proceedings began before the IIRIRA's effective date. *Id.* Therefore, once the OSC was served, Tapia's time toward continuous presence was stopped by statute, and any time incurred thereafter did not accrue toward the seven-year requirement.

### III.  CONCLUSION

Because the immigration court's conclusions are supported by substantial evidence, the petition for review is DENIED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*