# MATTER OF TORRES

## In Exclusion Proceedings

### A-22925710
### A-22925711

*Decided by Board April 18, 1986*

(1) In holding that an applicant for adjustment of status who is returning to the United States pursuant to a grant of advance parole under 8 C.F.R. § 212.5(d)(2) (1986) is properly placed in exclusion proceedings, the Board of Immigration Appeals specifically declined to follow *Joshi v. District Director, INS,* 720 F.2d 799 (4th Cir. 1983), and *Patel v. Landon,* 739 F.2d 1455 (9th Cir. 1984), outside of the courts' respective circuits.

(2) The applicants, who no longer derive protection from the dissolved injunction in *Silva v. Bell,* 605 F.2d 978 (7th Cir. 1979), were properly placed in exclusion proceedings and, hence, were not entitled to apply for suspension of deportation.

EXCLUDABLE: Act of 1952—Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa

ON BEHALF OF APPLICANT:
Mary Jo O'Bryan, Accredited Representative
Catholic Services for Immigrants
Archdiocese of San Antonio
2903 West Salinas
San Antonio, Texas 78207

ON BEHALF OF SERVICE:
Eloise Rosas
District Counsel

BY: Milhollan, Chairman; Dunne, Morris, and Vacca, Board Members

The applicants appeal from the May 1, 1984, decision of the immigration judge finding them excludable from the United States, and, therefore, denying their applications for suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1254(a)(1) (1982). The appeal will be dismissed.

The applicants' excludability under section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1982), is the determinative issue raised at the exclusion hearing. The fact that the applicants lacked immigrant visas when they last arrived in the United States is undisputed. However, the applicants appeal from the immigration judge's con-

clusion that they were properly placed in exclusion proceedings, and, therefore, were ineligible for suspension of deportation.

The parties stipulated that the applicants last arrived in the United States at Laredo, Texas, on November 30, 1978, and sought admission to resume their status as *Silva* aliens. *See Silva* v. *Bell*, 605 F.2d 978 (7th Cir. 1979), *modifying Silva* v. *Bell*, No. 76-C 4268 (N.D. Ill. Oct. 10, 1978). They did not present an immigrant visa or other document to permit their entrance as immigrants. They were paroled into the United States pursuant to section 212(d)(5) of the Act, because they had obtained advance parole from the district director in order to make a brief visit abroad.

Advance parole is a flexible humanitarian device rooted in the public interest. *See* 8 C.F.R. § 212.5(a)(2) (1986); Immigration and Naturalization Service Operations Instructions 212.5(c). Such advance parole may be granted for humanitarian reasons to aliens present in the United States, including applicants for adjustment of status whose application for adjustment is pending, and who have to depart temporarily from the United States for emergent personal or bona fide business reasons, in order that their applications for adjustment of status are not deemed abandoned. *See* 8 C.F.R. §§ 212.5, 245.2(a)(3) (1986); Operations Instructions 212.5(c); 1 C. Gordon and H. Rosenfield, *Immigration Law and Procedure*, § 2.54, at 2-368 to -375 (rev. ed. 1986).

The applicants were in the United States as applicants claiming Western Hemisphere visa availability pursuant to the *Silva* decision, as noted above. The male applicant had entered the United States in February of 1973, as a nonimmigrant visitor for a period not to exceed 72 hours pursuant to a Nonresident Alien Mexican Border Crossing Card (Form I-186). The female applicant had also entered as a nonimmigrant visitor allowed to remain for 72 hours pursuant to a Form I-186. Neither departed. Their deportation to Mexico had been stayed pursuant to the *Silva* decision. In November of 1978, while their adjustment of status application was pending, the female applicant's father in Mexico became sick. Consequently, on November 17, 1978, they applied for, and were granted, advance parole on humanitarian grounds to visit her father and return to the United States before December 2, 1978. When they returned from Mexico on November 30, 1978, the *Silva* injunction was still in effect. Consequently, their exclusion proceedings were held in abeyance pending allocation of the immigrant visas made available pursuant to the *Silva* injunction. The propriety of exclusion proceedings is determinative in this case because the applicants seek to apply for suspension of deportation, which is a form

of relief from deportation unavailable to aliens in exclusion proceedings. *See Matter of E-*, 3 I&N Dec. 541 (BIA 1949).

It is well settled that when an alien is paroled into the United States pursuant to section 212(d)(5) of the Act and 8 C.F.R. § 212.5 (1986), pending exclusion proceedings in accordance with sections 235 and 236 of the Act, 8 U.S.C. §§ 1225 and 1226 (1986), and Parts 235 and 236 of Title 8 of the Code of Federal Regulations, he does not gain the additional protections prescribed for deportation proceedings. *Rogers v. Quan*, 357 U.S. 193 (1958); *Leng May Ma v. Barber*, 357 U.S. 185 (1958); *Siu Fung Luk v. Rosenberg*, 409 F.2d 555 (9th Cir. 1969); *United States ex rel. Stellas v. Esperdy*, 366 F.2d 266 (2d Cir. 1966); *United States ex rel. Lam Hai Cheung v. Esperdy*, 345 F.2d 989 (2d Cir. 1965); *Wong Hing Fun v. Esperdy*, 335 F.2d 656 (2d Cir. 1964); *Wong Hing Goon v. Brownell*, 264 F.2d 52 (9th Cir. 1959); *Licea-Gomez v. Pilliod*, 193 F. Supp. 577, 579-80 (N.D. Ill. 1960); *United States ex rel. Tom We Shung v. Murff*, 176 F. Supp. 253, 256 (S.D.N.Y. 1959); *In re Milanovic's Petition*, 162 F. Supp. 890, 894 (S.D.N.Y. 1957), *aff'd sub nom. United States ex rel. Milanovic v. Murff*, 253 F.2d 941 (2d Cir. 1958). It is similarly established that an alien properly in exclusion proceedings is not entitled to apply for suspension of deportation, despite being present in the United States on parole for an extensive period of time. *Yuen Sang Low v. Attorney General*, 479 F.2d 820 (9th Cir.), *cert. denied*, 414 U.S. 1039 (1973).

The court's injunction in *Silva v. Bell, supra*, has now been dissolved, after all available Western Hemisphere immigrant visas were allocated. *See Sanchez-Escareno v. INS*, 681 F.2d 1133 (9th Cir. 1982). Consequently, the applicants no longer derive any protection from the terms of the *Silva* court's injunction. The United States Court of Appeals for the Ninth Circuit has recently concluded that the *Silva* injunction did not exempt *Silva* aliens from complying with the 7 years' continuous physical presence requirement of section 244(a)(1) of the Act, even if their departure from the United States and illegal return took place prior to the Supreme Court's strict interpretation of that requirement in *INS v. Phinpathya*, 464 U.S. 183 (1984). *See Bagues-Valles v. INS*, 779 F.2d 483 (9th Cir. 1985); *cf. Matter of Dilla*, 19 I&N Dec. 54 (BIA 1984). Nevertheless, the applicants contend that since they had submitted applications for adjustment of status as *Silva* aliens on September 5, 1978, and made their sojourn to Mexico pursuant to a grant of advance parole, they should be placed in deportation proceedings where they could also submit applications for suspension of deportation. In support of this contention the applicants cite the court's decision in *Joshi v. District Director, INS*, 720 F.2d 799 (4th Cir. 1983), and

the subsequent *Patel* v. *Landon*, 739 F.2d 1455 (9th Cir. 1984), that held that an applicant for adjustment of status returning to the United States pursuant to a grant of advanced parole is entitled to have his application for adjustment of status considered in deportation proceedings.

The issue in both the *Joshi* and *Patel* cases involved an interpretation of 8 C.F.R. § 245.2(a)(3) (1983) regarding the termination of applications for adjustment of status under the "deemed abandoned" concept. The pertinent part of 8 C.F.R. § 245.2(a)(3) (1983) then stated as follows:

> The departure of an applicant [for permanent resident status under section 245 of the Act] who is not under deportation proceedings shall be deemed an abandonment of his application constituting grounds for termination thereof unless he had previously been *granted permission by the Service for such absence and* he was *thereafter inspected* upon his return, or it is *determined* by the officer having jurisdiction over his application *that his departure was unintended or innocent and casual, that his absence was brief,* and that he was inspected upon his return. If the determination reached is favorable to the applicant, *the application shall be adjudicated without regard to the departure and absence.* (Emphasis added.)

The *Joshi* and *Patel* cases arose outside of the jurisdiction of the United States Court of Appeals for the Fifth Circuit, where this case arises. Consequently, the applicants seek to have us apply the holdings in those cases outside of the jurisdictions of the Fourth and Ninth Circuit Courts of Appeals.[1] Moreover, the applicants request that we extrapolate the holdings in *Joshi* and *Patel* from the adjustment of status area to suspension of deportation issues. The applicants contend that they should be placed in deportation proceedings so that they may submit applications for suspension of deportation. We decline to do so for the following reasons.

First, we disagree with the analysis underlying the decisions in *Joshi* v. *INS, supra,* and *Patel* v. *Landon, supra.* Both decisions erroneously assume that an alien must be placed in deportation proceedings in order to have his application for adjustment of status properly considered. The court in *Joshi* v. *INS, supra,* at 801, relied on the Supreme Court's decision in *Rosenberg* v. *Fleuti,* 374 U.S. 449 (1963), in interpreting the language in 8 C.F.R. § 245.2(a)(3) (1983), underlined above. The *Joshi* court merely stated, without explaining, that the regulations applied the *Fleuti* rationale and, therefore, that "[t]his case, we believe, provides a proper occasion for giving effect to this aspect of *Fleuti.*" *Joshi* v. *INS, supra,* at

---

[1] The United States Court of Appeals for the Fifth Circuit recently declined to express its view on this issue because it lacked direct appellate jurisdiction over orders of exclusion. *See Delgado-Carrera* v. *United States INS,* 773 F.2d 629 (5th Cir. 1985); *cf. Castillo-Magallon* v. *INS,* 729 F.2d 1227 (9th Cir. 1984).

801. The court in *Patel* v. *Landon, supra,* at 1457, merely cited *Joshi* on this issue, without further analysis. However, the Supreme Court in *INS* v. *Phinpathya, supra,* at 188, had already specifically noted that its previous holding in *Rosenberg* v. *Fleuti, supra,* applied only to lawful permanent residents whose brief absence abroad was excepted from the definition of entry pursuant to section 101(a)(13) of the Act, 8 U.S.C. § 1101(a)(13) (1982). Consequently, we cannot agree with the *Joshi* and *Patel* decisions' application of the *Fleuti* doctrine to aliens who had not been admitted for lawful permanent residence in the context of interpreting the language of 8 C.F.R. § 245.2(a)(3) (1983). *INS* v. *Phinpathya, supra.*

A second reason for declining to adopt the *Joshi* and *Patel* courts' interpretation of 8 C.F.R. § 245.2(a)(3) (1983) is its inconsistency with the other pertinent language in the regulations. The language in 8 C.F.R. §§ 236.4, 245.2(a)(1), and 245.2(a)(4) (1986), referring to an application for adjustment of status denied by a district director being renewed in exclusion proceedings, is rendered a nullity if we were to conclude that deportation proceedings are required for adjustment applicants making a brief visit abroad as defined in 8 C.F.R. § 245.2(a)(3) (1983). It is also clear from the comments accompanying these regulations when proposed that the consideration of these applications in exclusion proceedings was the method contemplated.[2] *See* 43 Fed. Reg. 16,445, 16,446 (1978), 33 Fed. Reg. 17,135, 17,136, (1968). Consequently, the two courts' conclusion that the regulation's use of the language "brief," "casual," and "unintended or innocent" requires the institution of deportation proceedings is unwarranted. The regulations were merely describing the type of absences from the United States which would not result in the abandonment of an adjustment application.

An alien paroled into the United States pursuant to section 212(d)(5) of the Act remains subject to exclusion proceedings pursuant to sections 235 and 236 of the Act. *See* 8 C.F.R. § 212.5(d)(2) (1986). Section 212(d)(5) specifically states that an alien paroled into the United States pursuant to that section must be dealt with as any other applicant for admission upon termination of the parole. It is well settled that this Board's jurisdiction is bound by properly enacted regulations. *Matter of Bilbao-Bastida,* 11 I&N Dec. 615 (BIA 1966), *aff'd, Bilbao-Bastida* v. *INS,* 409 F.2d 820 (9th Cir.), *cert. denied,* 396 U.S. 802 (1969); *Matter of Tzimas,* 10 I&N Dec. 101

---

[2] 8 C.F.R. § 245.2(a)(3) (1983) has now been clarified, effective April 3, 1986, to remove the language about unintended, innocent, casual, and brief departures from the United States, and also to specify that aliens returning to the United States pursuant to a grant of advance parole are subject to exclusion proceedings and are not entitled to a deportation hearing. *See* 51 Fed. Reg. 7431 (1986).

(BIA 1962). Consequently, we cannot disregard the language in 8 C.F.R. §§ 212.5(d)(2), 236.4, and 245.2(a)(1) (1986), which contemplate such an applicant being placed in exclusion proceedings. It is similarly well settled that this Board cannot question the propriety of the statutes enacted by Congress. See *Matter of Chery and Hasan*, 15 I&N Dec. 380 (BIA 1975); *Matter of Santana*, 13 I&N Dec. 362 (BIA 1969); *Matter of L–*, 4 I&N Dec. 556 (BIA 1951). Since both section 212(d)(5) of the Act and 8 C.F.R. § 212.5(d)(2) (1986), as well as the recently promulgated 8 C.F.R. § 245.2(a)(3) (1986), prescribe that an alien paroled into the United States must be placed in exclusion proceedings, we would be unable to adopt the *Joshi* and *Patel* decisions beyond the boundaries of the jurisdictions in which those two cases arose. In any event, as we disagree with the decisions, we decline to follow the position of the Fourth and Ninth Circuits outside of those circuits.

A final question raised by the applicants' appeal remains to be addressed. Attached to the applicants' brief is a February 13, 1985, memorandum from the Service's Associate Commissioner and addressed to all regional commissioners, district directors, and officers in charge. The memorandum states that the Service has reversed its previous conclusions regarding holding in abeyance the applications for adjustment of status of *Silva* aliens pursuant to Operations Instructions 245.4(a)(6).[3] It further states that such applications should now be reactivated by means of a Service motion to reopen and held in abeyance in accordance with Operations Instructions 245.4(a)(6).

Here no such motion has been submitted by the Service.[4] Consequently, absent such a motion, we must proceed to dismiss the appeal since we cannot review the district director's decision to initiate these proceedings. See *Lopez-Telles v. INS*, 564 F.2d 1302 (9th Cir. 1977); *Matter of Quintero*, 18 I&N Dec. 348 (BIA 1982); *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978); *Matter of Merced*, 14 I&N Dec. 644 (BIA 1974); *Matter of Geronimo*, 13 I&N Dec. 680 (BIA 1971). It is so ordered.

**ORDER:** The appeal is dismissed.

---

[3] Operations Instructions 245.4(a)(6) prescribes that applications for adjustment of status filed with visa availability, which cannot be approved solely because a visa number is not available at the time of processing, should be held in abeyance pending the allocation of a visa number. See *Matter of Huang*, 16 I&N Dec. 358 (BIA 1977); *Matter of Ho*, 15 I&N Dec. 692 (BIA 1976).

[4] Such a motion may be submitted by the Service after the exclusion order is final. See *Matter of Rangel-Cantu*, 12 I&N Dec. 73 (BIA 1967).