RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0351P (6th Cir.)
File Name: 01a0351p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VIOREL FIERAN,

        *Petitioner,*

    *v.*

IMMIGRATION AND
NATURALIZATION SERVICE;
JOHN ASHCROFT, Attorney
General,

        *Respondents.*

No. 00-3379

On Petition for Review of an Order of the Board of
Immigration Appeals.
No. A29 847 457.

Argued: May 3, 2001

Decided and Filed: October 2, 2001

Before: NORRIS and COLE, Circuit Judges;
HOLSCHUH, District Judge.*

---

*The Honorable John D. Holschuh, United States District Judge for
the Southern District of Ohio, sitting by designation.

1

---

**COUNSEL**

**ARGUED:**    Joel A. Perlmutter, Cleveland, Ohio, for Petitioner. Patrick Shen, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondents. **ON BRIEF:**  Joel A. Perlmutter, Cleveland, Ohio, for Petitioner. Carl H. McIntyre, Jr., John L. Davis, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondents.

---

**OPINION**

---

ALAN E. NORRIS, Circuit Judge. Petitioner Viorel Fieran challenges a final order of the Board of Immigration Appeals (BIA) denying his motion to remand and reopen deportation proceedings for the purpose of applying for cancellation of removal.  We affirm the BIA decision.

## I.  Factual and Procedural Background

Fieran is a citizen of Romania who entered the United States as a stowaway in May 1990.  He was taken into custody by the Immigration and Naturalization Service (INS) and was paroled into the United States (meaning that he was released, but not "lawfully admitted").  He applied for political asylum, but in 1991, the INS issued a notice of intent to deny asylum.  On May 21, 1992, he was placed in exclusion proceedings before an immigration judge.  At a hearing on December 10, 1993, Fieran admitted that he was excludable and requested asylum and withholding of deportation.  On April 19, 1994, at a hearing on the merits, the immigration judge denied the applications and ordered that Fieran be excluded and deported.  The judge decided that Fieran had failed to establish past persecution or a well-founded fear or clear probability of future persecution in

Given the unavailability of § 309(f) relief to Fieran, there was no abuse of discretion in denying his motion to remand his case.

## IV.  Conclusion

For the foregoing reasons, we **affirm** the BIA's decision and lift the stay of removal.

Romania, as required for asylum or withholding of exclusion and deportation.

Fieran appealed to the BIA.  While the appeal was pending, Congress enacted a new law called the  Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. 104-208, 110 Stat. 3009, 3009-546 (1996) (IIRIRA), which instituted a more restrictive scheme designed to expedite the removal of unlawful aliens and to limit their ability to obtain discretionary relief. *Ashki v. INS*, 233 F.3d 913, 917 (6th Cir. 2000).  Most of the IIRIRA changes went into effect on April 1, 1997, and were not retroactive.  IIRIRA § 309(a), (c)(1).  There were, however, several "transitional rules" that applied to proceedings begun before the effective date of the act.  *See, e.g.*, IIRIRA § 309(c)(5)(A).

On November 19, 1997, Congress again changed the law with the enactment of the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, 111 Stat. 2160, 2193 (1997) (NACARA).    The act eased the strict requirements of the IIRIRA for certain aliens, including qualified Romanians, by applying the less stringent pre-IIRIRA requirements.  *See* NACARA § 203(a)-(b).  At issue in this case is a NACARA amendment on the cancellation of removal—§ 203(b), which inserted § 309(f) in the IIRIRA.[1]

---

[1] In relevant part, the statute reads:

(f) SPECIAL RULE FOR CANCELLATION OF REMOVAL

> (1) IN GENERAL — Subject to the provisions of the Immigration and Nationality Act (as in effect after the title III-A effective date), other than subsections (b)(1), (d)(1), and (e) of section 240A of such Act (but including section 242(a)(2)(B) of such Act), the Attorney General may, under section 240A of such Act, cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States, if the alien applies for such relief, the alien is described in subsection (c)(5)(C)(i) of this section, and —
> > (A) the alien —

Fieran read this new provision as applying to him, and he filed a motion to remand his case to the immigration judge for consideration of his application for suspension of deportation or cancellation of removal under the new law.

On February 28, 2000, the BIA adopted the decision of the immigration judge and denied Fieran's motion to remand the case for a hearing. In denying Fieran's motion for a remand, the BIA explained:

> We find that we must deny the applicant's motion because, as the applicant is in exclusion proceedings, he is statutorily ineligible for suspension of deportation. *See Matter of Torres*, 19 I&N Dec. 371, 373 (BIA 1986). As such, he does not qualify for the recently-enacted provisions of law governing applications for suspension of deportation for citizens of Romania who have been placed in deportation proceedings. *See generally* section 203(c) of the NACARA ["Motions to reopen deportation or removal proceedings"].

*In re Viorel Fieran*, File A29 847 457 Cleveland (BIA Feb. 28, 2000) (Joint Appendix at 3).

---

(i) is not inadmissible or deportable under paragraph (2) or (3) of section 212(a) or paragraph (2), (3), or (4) of section 237(a) of the Immigration and Nationality Act and is not an alien described in section 241(b)(3)(B)(i) of such Act;

(ii) has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application;

(iii) has been a person of good moral character during such period; and

(iv) establishes that removal would result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence[.]

IIRIRA § 309(f)(1)(A).

nationalities from the retroactive application of the 'stop time' rule"); *Treimann*, 2000 WL 1838735, at *2 (discussing in dicta how NACARA § 203(a) on time calculation could render some aliens eligible for suspension of deportation). Section 309(g) of the IIRIRA can function for these aliens by allowing them to reopen deportation or removal proceedings, and denial of Fieran's claim will not render IIRIRA § 309(g) meaningless.

Other courts have reached the conclusion that the old law applies to those aliens placed in exclusion or deportation proceedings before April 1, 1997. In *Patel v. McElroy*, 143 F.3d 56 (2d Cir. 1998), the Court of Appeals for the Second Circuit considered the case of an alien who was placed in exclusion proceedings in 1994 and who applied for suspension of deportation under the old INA (but did not invoke the new provision Fieran cites). On March 17, 1997, the BIA found him ineligible to apply for suspension of deportation. *Id.* at 58. The court, in reviewing this determination, applied pre-1996 law and noted that in view of the new IIRIRA provision on "cancellation of removal," its decision did not apply to aliens who were placed in proceedings on or after April 1, 1997. *Id.* at 61; *see also Treimann v. INS*, No. 99-70528, 2000 WL 1838735, at *1 (9th Cir. Dec. 13, 2000) (unpublished memorandum opinion) ("Although IIRIRA repealed § 244(a) [suspension of deportation] and replaced it with INA § 240A [cancellation of removal], for aliens like Treimann placed in proceedings before April 1, 1997, § 244(a) governs").

Fieran was placed in exclusion proceedings on May 21, 1992, long before the effective date of the IIRIRA. The provision upon which he relies therefore does not apply to his case. Fieran's argument is limited to asserting that he is eligible for relief under the special rule; he does not claim that he is entitled to relief under the old act, so we need not discuss the unavailability of relief under the old INA. *See Patel*, 143 F.3d at 60 (finding an excludable alien ineligible for suspension of deportation under pre-IIRIRA law).

removal"); 64 FED. REG. 27,856, 27,859-60 (INS interim rule stating that those placed in exclusion proceedings before April 1, 1997, are subject to the pre-IIRIRA rules governing exclusion).

Moreover, the amendment's purpose is to apply pre-IIRIRA standards to aliens who are subject to the other, stricter terms of the IIRIRA. Fieran is not subject to the general amendments made by the IIRIRA, which apply only to aliens placed in proceedings after April 1, 1997, *see* IIRIRA § 309(a), but is subject to the terms of the pre-IIRIRA law. Thus the amendment's purpose to impose pre-IIRIRA terms would be illogical here where pre-IIRIRA terms already govern.

Fieran tries to avoid this conclusion by arguing that the succeeding IIRIRA subsection, § 309(g), would be meaningless if we do not apply the special cancellation rule to him. Section 309(g) provides for motions "to reopen deportation or removal proceedings" for any alien "who has become eligible for cancellation of removal or suspension of deportation as a result of the amendments made by section 203 of the" NACARA. According to Fieran, no aliens already in proceedings would "become eligible," as the provision contemplates, under our reading.

Fieran's argument neglects the changes in other subsections of the NACARA, which may apply to aliens and render them eligible for suspension of deportation. For instance, the NACARA also amended the rules on calculating the time of an alien's residence in the United States, relevant to suspension-of-deportation eligibility, for the class of aliens from certain Central American and former Soviet Bloc countries. NACARA § 203(a)(1), *amending* IIRIRA § 309(c)(5)(C). Some aliens may, thanks to this amendment, find that they have enough years in residence to qualify for suspension of deportation, whereas they would not have before the NACARA amendment. *See Ashki*, 233 F.3d at 919 (explaining in dicta that "NACARA section 203 amended the transition rules in IIRIRA section 309(c)(5) to exempt certain

Fieran petitions this court to review the denial of his motion to remand and reopen.

## II. Statutory Background

Under the Immigration and Nationality Act (INA) before the 1996 amendments, the law distinguished between deportable and excludable aliens. A deportable alien was an alien who had been admitted into the United States but had to be expelled. *See* 8 U.S.C. § 1251 (1994). An excludable alien was an alien who was ineligible for admission into the United States; such an alien could be paroled into the United States pending the initiation of exclusion proceedings, but the alien, although physically in the United States, was nevertheless deemed excludable. *See* 8 U.S.C. § 1182(a) (1994), 8 U.S.C. § 1182(d)(5); *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958). The new statutory scheme adopted different terminology that replaced the exclusion/deportation distinction; provisions for "removal" now cover both excludable aliens (now termed "inadmissible") and deportable aliens. *See* 8 U.S.C. §§ 1182(a), 1229a.

Under the old INA, the Attorney General had the discretion to suspend the deportation of qualified aliens if certain conditions were met; this discretion did not extend to excludable aliens. *See* 8 U.S.C. § 1254(a) (1996); *Leng May Ma*, 357 U.S. at 188. The new IIRIRA repealed this authority and replaced it with a provision on "cancellation of removal," which contained more restrictive rules. IIRIRA § 304(a), *codified at* 8 U.S.C. § 1229b. Congress then amended this new scheme when it enacted the NACARA in the following year to create an exception for qualifying aliens from Central American and former Soviet Bloc countries, who could benefit from the less stringent old rules, rather than the new IIRIRA rules. The provision at issue here is the "special rule for cancellation of removal," NACARA § 203(b). This special rule states that it applies to "an alien who is inadmissible or deportable from the United States" if she or he meets certain requirements. NACARA § 203(b). Fieran argues that this special rule applies to him; since he was in

exclusion proceedings, he could not qualify for suspension of deportation under the old law, but his hope is that he would be eligible for cancellation of removal under the NACARA amendment, which mentions both inadmissible and deportable aliens.

### III.  Statutory Construction

We review the BIA's denial of a motion to remand for abuse of discretion.  *Ashki*, 233 F.3d at 917.[2]  We review questions of statutory interpretation de novo, *id.*, but with due deference to the interpretation by the Attorney General and BIA.  *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  Under this analysis, we must first ask "whether Congress has directly spoken to the precise question at issue."  *Chevron*, 467 U.S. at 842.  We "employ[] traditional tools of statutory construction" to ascertain the intent of Congress on the issue.  *Id.* at 843 n.9.  If Congress has addressed the question, its answer "is the law and must be given effect."  *Id.*  If there is ambiguity in the statute, then we determine "whether the agency's answer is based on a permissible construction of the statute."  *Id.* at 843.

Fieran claims that he is eligible for cancellation of removal under IIRIRA § 309(f).  On appeal, the INS argues that the provision only applies to aliens placed in proceedings on or after April 1, 1997.  The BIA in its decision did not address the retroactivity of the IIRIRA provision invoked by Fieran. Instead, it determined that the provision was inapplicable because Fieran was excludable, which would bar him from relief under the old INA.  The BIA supported its conclusion with a citation to a 1986 case holding that aliens in exclusion proceedings were not eligible for suspension of deportation

---

[2]*Ashki* involved a motion to reopen, while Fieran styled his motion as one to remand.  The difference in title is not significant because the two motions are treated in a similar fashion.  *See In re Yewondwosen*, 21 I. & N. Dec. 1025 (BIA 1997); *Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir. 1987).

under the (old) INA.  *See Matter of Torres*, 19 I. & N. Dec. 371, 373 (BIA 1986).  We agree that Fieran was not eligible for suspension of deportation under the old INA, *see Leng May Ma*, 357 U.S. at 188, but that does not answer the question of whether or not the new statute applies to Fieran.

The effective date of the IIRIRA was April 1, 1997, and the statute is generally prospective: "[s]ubject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before the title III-A effective date [April 1, 1997] — . . . the amendments made by this subtitle shall not apply[.]"  IIRIRA § 309(c)(1); *see also* IIRIRA § 309(a) (effective date).  There are nevertheless several rules labeled "transitional rules" or, in our case, a "special rule."  The transitional rules are explicit about their application; one on residency qualifications applies, for example, to orders to show cause "issued before, on, or after the date of the enactment of this act."  IIRIRA § 309(c)(5)(A).

Fieran invokes a rule captioned "special rule for cancellation of removal."  IIRIRA § 309(f).  This rule does not say that it applies to orders issued before the enactment date.  Congress's failure to include language applying § 309(f) to cases initiated prior to the IIRIRA's enactment, and Congress's express application of several other IIRIRA provisions to pre-enactment behavior, lead us to conclude that Congress intended § 309(f) to apply to aliens whose orders of removal were entered after the IIRIRA.  *See Sherifi v. INS*, -- F.3d--, 2000 WL 33405481, at *4 (7th Cir. Aug. 1, 2001) (holding that NACARA suspension of deportation does not apply to an alien placed in exclusion proceedings before the effective date of the law); *Castro-Cortez v. INS*, 239 F.3d 1037, 1052 (9th Cir. 2001) (holding that an IIRIRA provision on reinstatement of orders of removal did not apply to aliens who reentered prior to the IIRIRA's effective date); *see also* 143 CONG. REC. S12,265-01, S12,266 (Nov. 9, 1997) (Senate explanatory memorandum on the Omnibus Appropriations Bill containing NACARA; stating that "Eligible Class Members who were not in exclusion or deportation proceedings as of April 1, 1997 may apply for cancellation of