

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-2-2005

# Jahic v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3726

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Jahic v. Atty Gen USA" (2005). *2005 Decisions.* Paper 751.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/751

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3726

SEAD JAHIC; SELMA JAHIC; AMAR JAHIC,
Petitioners
v.

ALBERTO GONZALES,[*] Attorney General
of the United States,
Respondent

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS
Agency Nos. A71-873-466, A71-873-467
and A71-873-468

Submitted Under Third Circuit LAR 34.1(a)
June 29, 2005

Before: ROTH, RENDELL, and BARRY, Circuit Judges

(Opinion Filed: August 2, 2005)

OPINION

---

[*]Attorney General Alberto Gonzales has been substituted for former Attorney General John Ashcroft, the original respondent in this case, pursuant to Fed. R. App. P. 43(c).

BARRY, Circuit Judge

Petitioners Sead and Selma Jahic, a married couple, and their minor son, Amar Jahic, are natives of Bosnia.[1] The family fled Bosnia during the war in 1992, and, after a brief stay in Germany, arrived in the United States in May, 1992. The Jahics presented themselves to customs officials upon their arrival at Newark airport, and were placed into exclusion proceedings.[2] In July, 1992, the Jahics submitted an application for asylum. Shortly thereafter, the Attorney General added Bosnia-Herzegovina to the Temporary Protected Status Program ("TPS"). Based on this action, on August 28, 1992, the Immigration Judge ("IJ") administratively closed the Jahics' immigration case "to afford the [Jahics] an opportunity to apply and be considered for Temporary Protected Status." Appendix ("App.") 20; Administrative Record ("A.R.") 318-319.

For reasons that are not entirely clear, the Jahics' attorney never pursued an application for TPS, although the Jahics assumed that he had done so. Nonetheless, they remained in the United States and received authorization for employment here. In 2002, they were denied an extension of their employment authorization because their case had been administratively closed by the IJ, and there was no application currently pending.

---

[1] The three Jahics' cases have been consolidated. In 1995, the Jahics had a second child, Amina Jahic, who was born in New York and is an American citizen.

[2] The Jahics entered the United States using fraudulent visas they had procured in Germany. Although the IJ found that the Jahics were aware that these visas were not legitimate, this issue was not material to IJ's disposition of the case, because the Jahics had conceded that they were excludable aliens.

2

Id.[3]

Thus, in May, 2002, the Jahics filed a motion to reopen removal proceedings, and, in November, they again filed applications for political asylum. At a calendar hearing in November, they sought a continuance in order to obtain a "repapering" from the Immigration and Naturalization Service ("INS").[4] If granted, the "repapering" would terminate the exclusion proceedings and permit the Jahics to file an application for cancellation of removal. As discussed below, this technical change in the type of immigration proceedings would allow the Jahics to apply for discretionary relief from removal.

At the Jahics' request, the IJ continued the case for six months. At a subsequent hearing in April, 2003, the Jahics again moved for a continuance, this time on the ground that the INS had not yet responded to their repapering request. The IJ denied the request for a further continuance, and, after a hearing, denied the Jahics' application for asylum.

---

[3]Although none of the parties attempts to explain the reason for this change in the Jahics' employment authorization, it seems likely that it was a result of the removal of Bosnia from Temporary Protected Status as of February 10, 2001. See 65 Fed. Reg. 52789, 52791 (Aug. 30, 2000) (noting that "stay of removal and eligibility for employment authorization due to the designation of Bosnia-Herzegovina for TPS will no longer be available.").

[4]On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2125. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions to the new department. Because this case was initiated while the INS was still in existence, this opinion refers to the agency as the INS.

The BIA affirmed, and this appeal followed.[5]  We will grant the petition for review.

On appeal, the Jahics make two arguments.  First, they argue that their due process rights were violated when they were denied the opportunity to pursue repapering.  Second, they argue that their application for asylum should have been granted on the merits.

The second argument is easily rejected.  At the hearing before the IJ, the Jahics testified regarding their experiences during the 1992 war.  As Bosnian Muslims, the Jahics were harassed, and Sead was subject to brief periods of detention and interrogation.  In addition, the Jahic home was destroyed during the fighting, although the IJ found that this incident "appeared to be part of the civil fighting in Bosnia, and not really directed against" the Jahics specifically.  App. 124.  When the Jahics arrived in the United States in 1992, a State Department advisory concluded that Sean Jahic had "good reason to fear for his safety" in Bosnia.  App. 18.  Nonetheless, during the Jahics' asylum hearing in 2003, the IJ noted that the 2003 State Department reports "make clear that the situation [in Bosnia] has improved drastically and substantially."  App. 125.

Mr. Jahic testified that if forced to return to Bosnia, "[t]here's [a] very good chance we [will] get killed, threatened, can be woman raped or some – you know, you can't protect yourself."  App. 101.  Nonetheless, although testifying that he feared reprisals for his refusal to serve in the military during the war, he conceded that an

---

[5]We granted the Jahics' motion for stay of removal pending appeal.

amnesty had been granted to those who had refused to serve, and stated that "maybe they don't want to threaten me or bring me in the jail or something but I, I'm not sure I can find a job. I can live life, you know, like everybody else." App. 101. Moreover, both Mr. and Mrs. Jahic acknowledged on cross-examination that they each had siblings currently living unharmed in Bosnia. Under these circumstances, the IJ correctly determined that the Jahics do not have a well-founded fear of future persecution in Bosnia.

The argument regarding "repapering" is more complex. At the time the Jahics entered the United States, the Immigration and Naturalization Act ("INA") contained a provision entitled "suspension of deportation," which vested the Attorney General with discretion to suspend deportation if the alien met three criteria: (1) continuous physical presence in the United States for seven years; (2) good moral character; and (3) deportation would result in extreme hardship to the alien or a member of the alien's immediate family.[6] See 8 U.S.C. § 1254(a)(1) (1995) (repealed 1996).

_____

[6] Section 1254(a)(1) provided in relevant part as follows:

> the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien . . . who applies to the Attorney General for suspension of deportation and is deportable under any law of the United States . . . ; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation

5

Although the Jahics at least arguably satisfy these criteria, they were ineligible to apply for suspension of deportation because, under the pre-1996 INA, aliens in exclusion proceedings were not entitled to suspension of deportation. *Patel v. McElroy*, 143 F.3d 56 (2d Cir. 1998); *see also Fieran v. INS,* 268 F.3d 340 (6th Cir. 2001).

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") amended the INA to combine the previously separate "deportation" and "exclusion" proceedings into a unified "removal" proceeding, and replaced the "suspension of deportation" provision with a new form of relief known as "cancellation of removal." *See Rojas-Reyes v. INS*, 235 F.3d 115, 120 (2d Cir. 2000). As relevant here, the criteria for "cancellation of removal" remained the same as for "suspension of deportation." *See* 8 U.S.C. § 1229b(1) (2005). Thus, under IIRIRA, the Jahics would be eligible to apply for cancellation of removal.

The parties and the IJ assumed that the Jahics' application was subject to the pre-IIRIRA statutory scheme. Thus, the parties and the IJ focused on the issue of whether the Jahics could apply for "repapering," a procedure whereby an alien in proceedings under the pre-IIRIRA regime could seek to have his or her proceedings administratively closed and then reopened under the IIRIRA regime.

The repapering issue, however, is no longer relevant to the Jahics' case. On May

would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

6

11, 2005, after the parties had submitted briefs in this case, Congress enacted the Real ID

Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 311. Section 106(d) of the Real ID

Act provides, in relevant part, as follows:

> Transitional Rule Cases...A petition for review filed under former section
> 106(a) of the Immigration and Nationality Act (as in effect before its repeal
> by section 306(b) of the Illegal Immigration Reform and Immigrant
> Responsibility Act of 1996 (8 U.S.C. 1252 note)) shall be treated as if it had
> been filed as a petition for review under section 242 of the Immigration and
> Nationality Act (8 U.S.C. 1252), as amended by this section.

8 U.S.C. § 1252 (2005) (note).

We asked the parties to address the impact of the Real ID Act upon this case. As

an initial matter, the language quoted above demonstrates Congress' intent to rescind the

transitional rule which had been in place for all pending appeals. As such, this provision

of the Real ID Act necessarily applies retroactively to all cases currently on appeal,

including this one. Thus, the Jahics' claims must be treated as if they had been filed

under IIRIRA. Based on the above-quoted language, the Government argues that we lack

jurisdiction to review a denial of a motion for a continuance, because IIRIRA divests this

court of jurisdiction over such issues. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).[7]

We need not delve into this question, however, because the very provision of the

---

[7]The Government acknowledges, however, that there is a split of authority on this
question. *Compare Onyinkwa v. Ashcroft,* 376 F.3d 797, 799 (8th Cir. 2004) (holding
that IIRIRA divests courts of appeals of jurisdiction to review IJ's discretionary denial of
continuance); *Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir. 2004) (same); *with
Zhoa v. Gonzales,* 404 F.3d 295, 303, n.6 (5th Cir. 2005) (rejecting *Onyinkwa* holding);
*Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004) (holding that courts of appeals
have jurisdiction to review IJ's denial of continuance under some circumstances).

Real ID Act upon which the Government relies also moots the Jahics' need for a continuance. The IJ and the BIA analyzed the Jahics' petition under pre-IIRIRA law, which contained the distinction between exclusion and deportation. As noted above, however, we must now treat the petition as if it had been filed under IIRIRA. Under IIRIRA, the Jahics are entitled to apply for cancellation of removal, and have no need to seek a continuance to obtain repapering. We will, therefore, grant the petition for review and remand for consideration of the Jahics' application for cancellation of removal under IIRIRA.