**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0541n.06

**Case No. 18-4264**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Oct 24, 2019 |
| AGUSTO NIZ-CHAVEZ, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| *Petitioner*, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| WILLIAM P. BARR, Attorney General, | ) | APPEALS |
| | ) | |
| *Respondent*. | ) | O P I N I O N |

BEFORE:    COLE, Chief Judge; MERRITT and LARSEN, Circuit Judges

COLE, Chief Judge.  Agusto Niz-Chavez, a Guatemalan native and citizen, arrived in the United States without inspection in 2005.  Immigration proceedings concerning Niz-Chavez commenced in 2013.  Niz-Chavez applied for withholding of removal under the Immigration and Nationality Act and for relief under the Convention Against Torture.  After the immigration judge ("IJ") denied those applications, Niz-Chavez appealed the IJ's decision to the Board of Immigration Appeals ("BIA") and asked the BIA to remand the case to the IJ to consider Niz-Chavez's application for cancellation of removal in light of the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018).  The BIA denied Niz-Chavez's motion to remand and affirmed the IJ's determination that Niz-Chavez was not entitled to withholding of removal or relief under the Convention Against Torture.  Niz-Chavez then appealed.

For the reasons stated below, we deny Niz-Chavez's petition for review of each of the challenged BIA decisions.

## I. BACKGROUND

### A. Factual Background

Niz-Chavez was born in Tajumulco, San Marcos, Guatemala in 1990. Prior to his arrival in the United States, he lived in Tajumulco with his family. He is the sixth of eight children in his family. Niz-Chavez and his family lived together on land that they owned without issue until around 2002. Around that time, a land dispute arose between Niz-Chavez's family and villagers from Ixchiguan, a neighboring village.

Niz-Chavez testified that Ixchiguan villagers murdered his brother-in-law during this dispute. Two years later, the dispute escalated again when fifty armed Ixchiguan villagers arrived at the land and took possession of the land by threatening Niz-Chavez's family, advising them that "if they found a member of [his] family [on the land], they were going to kill him or her." (September 13, 2017 Hearing Transcript, A.R. 197.) His family has not returned to the disputed land, and his parents now live on a piece of land about an hour from the land that the Ixchiguan villagers forcibly took. Some of Niz-Chavez's siblings also remain in Guatemala. Niz-Chavez testified that his family still receives threats from the Ixchiguan villagers, but he is not aware of any further acts of violence attempted or carried out against his family.

Niz-Chavez left Guatemala and arrived in the United States in 2005. After residing in Harrison, Virginia, for two years, Niz-Chavez moved to Detroit, Michigan, in 2007, where he has lived ever since. He is now the father of three children, who are United States citizens. Regarding a potential return to Guatemala, Niz-Chavez testified that he was concerned that the Ixchiguan villagers would learn of his return and, believing that he was in the country to reclaim the stolen

land, kidnap or kill him. He also expressed concern that the village of Tajumulco would force him to fight in a land war against the Ixchiguan villagers.

### B. Procedural Background

On March 26, 2013, Niz-Chavez was served with a notice to appear before an IJ in Detroit at a date and time to be determined later. On May 29, 2013, he received a notice of hearing in removal proceedings, which stated that the hearing in his case was scheduled on June 25, 2013, at the immigration court in Detroit. Niz-Chavez appeared at the hearing, conceded removability, and stated his intent to seek both withholding of removal and protection under the Convention Against Torture. Eventually, a hearing on the merits of his case was held before an IJ on September 13, 2017, with an oral decision issued by the IJ on November 8, 2017.

The IJ denied Niz-Chavez's application for withholding of removal and his application for relief under the Convention Against Torture. The IJ granted Niz-Chavez thirty days to voluntarily depart the country and advised him of his right to appeal to the BIA. The IJ found that Niz-Chavez failed to establish that he was subject to past persecution or that he could not avoid future persecution in Guatemala by relocating within the country, findings which are fatal to a claim for withholding of removal. The IJ also found that Niz-Chavez had not established that government officials in Guatemala acquiesce to any sort of torture, as is required for a claim under the Convention Against Torture.

Niz-Chavez timely appealed to the BIA, challenging the IJ's conclusions on both issues. He also filed a motion to remand to the IJ for consideration of Niz-Chavez's application for cancellation of removal in light of the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105, which interpreted the statutory requirements governing eligibility for cancellation of removal. Niz-Chavez argued that under the *Pereira* decision, he was now eligible for cancellation

of removal under 8 U.S.C. § 1229b(b), whereas he was not eligible under the BIA's interpretation of that statute at the time of his proceedings before the IJ. The BIA affirmed the IJ's decision and denied the motion to remand, finding that Niz-Chavez was not eligible for cancellation of removal under the *Pereira* decision.

Niz-Chavez filed a timely petition with this court.

## II.  ANALYSIS

### A.  Standard of Review

"Where . . . the BIA reviewed the IJ's decision de novo and issued its own separate opinion, we review the BIA's decision as the final agency determination." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007) (internal citation omitted). "To the extent the BIA adopted the [IJ's] reasoning, however, this Court also reviews the [IJ's] decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal citation omitted). The IJ and the BIA's factual findings are reviewed under the substantial-evidence standard, meaning that the court will not reverse such findings simply because it would have decided them differently. *Id.* (internal citation omitted). Rather, "[t]hese findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005)). Purely legal questions are reviewed de novo. *Sansusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007) (internal citation omitted).

### B.  Withholding of Removal

The Immigration and Nationality Act provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To be eligible for

withholding of removal under this provision, an applicant must demonstrate "a clear probability that he will be subject to persecution if forced to return to the country of removal." *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (internal citation and quotation omitted). To demonstrate persecution, an individual must show "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)).

In determining whether an applicant will be subject to persecution upon returning to the country of removal, we have held that "[a]pplicants who establish that they have suffered past persecution are presumed to have a well-founded fear of future persecution," although the government can rebut this presumption by demonstrating that conditions in the country have fundamentally changed from the time the persecution occurred such that the applicant no longer has a well-founded fear of future persecution. *Id.* (internal citation omitted). Additionally, the ability to safely relocate within the country of removal to avoid future persecution typically means that the applicant is not entitled to relief. *INS v. Orlando Ventura*, 537 U.S. 12, 18 (2002). Indeed, we have held that a finding that an applicant can avoid persecution by relocating within the country of removal is a sufficient basis to deny an application for withholding of removal. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1154–55 (6th Cir. 2010).

Here, the BIA found that Niz-Chavez had not established a presumption of future persecution because he had failed to show that he had been subjected to persecution when he was previously in Guatemala and that, to the extent there is a risk of future persecution, Niz-Chavez can avoid that risk by relocating within Guatemala. Specifically, the BIA agreed with the IJ that Niz-Chavez had not been persecuted in the past because he had never been subjected to physical

harm in Guatemala and could not demonstrate more than isolated instances of verbal harassment. The BIA also agreed with the IJ that Niz-Chavez could relocate within Guatemala to avoid any potential future persecution, pointing to the fact that the basis for Niz-Chavez's claim of persecution was a land dispute occurring on a specific piece of land and that his family members in Guatemala relocated within the country more than a decade ago and have not experienced further issues related to the land dispute. These findings are dispositive to Niz-Chavez's application for withholding of removal.

In challenging the findings, Niz-Chavez urges the court to consider the cumulative effect of the harms against his family perpetrated by the Ixchiguan villagers. He asserts that the murder of his brother-in-law, combined with the threats that his family received and the ultimate ceding of their land to the invading villagers is enough to establish that Niz-Chavez experienced persecution in the past. He cites our holding in *Gilaj v. Gonzales*, which requires the BIA to consider the aggregate abuses suffered by the individual in question in determining whether persecution has occurred. 408 F.3d 275, 287 (6th Cir. 2005). Regarding his ability to relocate, Niz-Chavez asserts that the BIA should have considered ongoing civil strife across Guatemala in making the determination as to whether Niz-Chavez had the ability to relocate to a different part of the country. Per Niz-Chavez, evidence of general lawlessness resulting from a lack of government control and poor judicial infrastructure compels the conclusion that he cannot safely relocate within Guatemala.

When it comes to both the issue of persecution suffered by Niz-Chavez and his ability to relocate within Guatemala, this court's role is not to issue a decision based on how it would independently assess the evidence. Rather, under substantial-evidence review, the court will only reverse the BIA's determination if "any reasonable adjudicator would be compelled to conclude

to the contrary." *Kahili*, 557 F.3d at 435 (internal citation and quotation omitted). Thus, our review is only to determine whether any reasonable adjudicator could reach the same conclusion on the merits of Niz-Chavez's claims as the BIA. Here, the BIA's conclusion survives this deferential review.

On this record, a reasonable adjudicator could reach the same conclusion as the BIA regarding both the question of whether Niz-Chavez suffered past persecution and whether he was able to relocate within Guatemala. The record does not reflect that Niz-Chavez was ever personally harmed, or that any of his family members who live in Guatemala have been harmed as a result of the land dispute since 2004. From this, the BIA could reasonably conclude that Niz-Chavez did not suffer abuses amounting to persecution when he previously lived in Guatemala and would not likely be subject to persecution were he forced to return. Moreover, the BIA could reasonably conclude that Niz-Chavez had the ability to safely relocate within Guatemala to avoid any potential persecution because his parents and siblings had been able to do so.

Accordingly, we deny Niz-Chavez's petition for review of the BIA's denial of his application for withholding of removal.

### C. Convention Against Torture

Under this court's precedent, an applicant who seeks relief under the Convention Against Torture must show that it is "more likely than not that he would be tortured if removed to the proposed country of removal." *Zhao v. Holder*, 569 F.3d 238, 241 (6th Cir. 2009); *see also* 8 C.F.R. § 1208.16(c). Torture "must entail the intentional infliction of severe mental or physical pain upon an individual by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (internal citation and quotation omitted). Acquiescence by a public official occurs when

the public official has "awareness of such activity and thereafter breach[es] his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "Willful blindness" is also considered to be acquiescence. *See Amir v. Gonzales*, 467 F.3d 921, 927 (6th Cir. 2006) (internal citation omitted). Finally, this court has also held that the Convention Against Torture "does not afford protection to torturous acts inflicted by wholly private actors." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501 (6th Cir. 2015) (internal citation omitted).

Here, the BIA found that it was not more likely than not that Niz-Chavez would be tortured with official acquiescence were he to return to Guatemala. The BIA found that even if the land feud violence were to occur and be considered severe enough to constitute torture, Niz-Chavez failed to show that it would occur with government acquiescence.

Niz-Chavez contends that the Guatemalan government's inability to adequately address land feud violence is the equivalent of acquiescence. He states that the fact that the Ixchiguan villagers were able to kill his brother-in-law and drive his family from their land without consequences shows that the Guatemalan government has breached its legal responsibility to prevent this sort of behavior.

This court requires more to show government acquiescence. Specifically, we have held that without testimony that establishes that government actors participated in, consented to, or willfully ignored the violence, the record does not compel a conclusion that the government acquiesced to torture. *Id.* at 502. Here, no testimony establishes that the government was willfully ignoring the land feud violence that occurs in Guatemala. As the government notes, record evidence demonstrates that the occurrence of land feud violence is actually decreasing in Guatemala, and there is no testimony that the government has ignored the problem. Moreover, as discussed above, the record also does not compel the conclusion that Niz-Chavez would be

subjected to violence at all, let alone violence amounting to torture that occurs with government acquiescence.

Thus, a reasonable adjudicator would not be compelled to conclude that it is more likely than not that Niz-Chavez would be subjected to torture upon his return to Guatemala. As such, we deny Niz-Chavez's petition for review of the BIA's denial of relief under the Convention Against Torture.

### D. Motion to Remand

Niz-Chavez also appeals the denial of his motion to remand to the IJ for consideration of an application for cancellation of removal following the Supreme Court's decision in *Pereira*. Niz-Chavez sought remand to apply for cancellation of removal under 8 U.S.C. § 1229b(b)(1), which gives the Attorney General discretion to cancel removal of a person who is subject to deportation when the person applies for cancellation and meets certain qualifications. *See* 8 U.S.C. § 1229b(b)(1).

Under 8 U.S.C. § 1229a(c)(7)(A), a person is entitled to file one motion to reopen immigration proceedings. The motion must "state the new facts that will be proven at a hearing to be held if the motion is granted" and "be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). The Supreme Court has held that there are "at least three independent grounds on which the BIA may deny a motion to reopen." *INS v. Abudu*, 485 U.S. 94, 104 (1988). The BIA may deny such a motion when (1) the movant has not established a prima facie case for the underlying substantive relief sought; (2) when the movant has not introduced new or previously unavailable evidence; or (3) the relief sought is discretionary and the movant is not entitled to a discretionary grant of relief. *Id.* at 104-05. The denial of a motion to reopen is reviewed for abuse of discretion. *Pilica v. Ashcroft*, 388 F.3d 941, 948 (6th Cir. 2004). We note that the fact that Niz-

Chavez filed his pleading as a "motion to remand" and not a "motion to reopen" does not change our analysis. This court typically treats motions to remand and motions to reopen "in a similar fashion," finding that "[t]he difference in title is not significant[.]" *See Fieran v. INS*, 268 F.3d 340, 344 n.2 (6th Cir. 2001).

For Niz-Chavez to be eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1), he must have been "physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application[.]" 8 U.S.C. § 1229b(b)(1)(A). Any period of continuous presence, however, is deemed to end when the person is "served a notice to appear under section 1229(a) of this title[.]" *Id.* § 1229b(d)(1). This is referred to as the "stop-time rule." *See Pereira*, 138 S. Ct. at 2109.

8 U.S.C. § 1229(a)(1) sets forth the requirements for what information must be included in a notice to appear. It states that, among other requirements, a notice to appear must include the time and place at which the proceedings concerning the recipient of the notice will be held. 8 U.S.C. § 1229(a)(1)(G)(i). For many years, it was common practice for the Department of Homeland Security to send notices to appear that did not contain information specifying the time and place at which proceedings against the recipient would be held. *Pereira*, 138 S. Ct. at 2111. In *Pereira*, the Supreme Court held that a document that does not specify the time and place of proceedings does not trigger the stop-time rule because it is not a notice to appear under 8 U.S.C. § 1229(a)(1). *Id.* at 2110.

Neither party contends that the notice to appear that Niz-Chavez received on March 26, 2013, which did not contain the requisite time and place information, triggered the stop-time rule. Niz-Chavez did, however, later receive information concerning the time and place of his hearing through a subsequent notice of hearing. The parties dispute whether this subsequent notice of

hearing can cure the defective notice to appear and, by extension, whether the two documents collectively triggered the stop-time rule. Niz-Chavez contends that they do not because he never received a singular document that would qualify as a notice to appear under 8 U.S.C. § 1229(a)(1). He argues that the *Pereira* decision constitutes previously unavailable evidence because, under his interpretation of *Pereira* and the operating statute, he has now accrued more than ten years of continuous presence in the United States, which would not have been the case under the BIA's precedent at the time of his proceedings before the IJ. Thus, he contends that the BIA erred in not remanding his case to the IJ so that he could pursue an application for cancellation of removal.

The government asserts that by providing Niz-Chavez all of the required information for a notice to appear under the statute across the two documents, it successfully triggered the stop-time rule. As a result, the government advances, Niz-Chavez is not eligible for cancellation of removal and the BIA did not err in denying him what would be a fruitless attempt to seek such relief.

At the time that the parties filed their briefs, this question was unresolved by this circuit and was in dispute around the country. The Ninth Circuit, for example, had adopted the approach that Niz-Chavez advances here, holding that the law does not permit multiple documents to collectively satisfy the requirements of a notice to appear. *See Lopez v. Barr*, 925 F.3d 396, 405 (9th Cir. 2019). Meanwhile, the Fifth Circuit reached the opposite conclusion, finding that a notice of hearing with time and place information can cure a defective notice to appear for purposes of triggering the stop-time rule. *See Pierre-Paul v. Barr*, 930 F.3d 684, 690 (5th Cir. 2019).

This court, however, has now resolved the dispute. *See Garcia-Romo v. Barr*, ___ F.3d ____, 2019 WL 4894346 (6th Cir. 2019 Oct. 4, 2019). In *Garcia-Romo*, this court was presented with this exact question of statutory interpretation: whether the government can trigger the stop-time rule by satisfying the requirements of a notice to appear through multiple documents. *Id.* at

*4. The court answered that question in the affirmative, finding that the stop-time rule is triggered when the government provides a person with all the information required under 8 U.S.C. 1229(a)(1) through more than one document. *Id.* at *6.

Under *Garcia-Romo*, the stop-time rule was triggered for Niz-Chavez on May 29, 2013, when he received information concerning the time and place of the immigration proceedings against him, which occurred prior to him accruing ten years of continuous physical presence in the United States. Without ten years of continuous physical presence in the United States, Niz-Chavez is not eligible for cancellation of removal under the governing statute. *See* 8 U.S.C. § 1229b(b)(1). He cannot, therefore, establish a prima facie case for the relief that he would seek on remand to the IJ. Accordingly, the BIA was justified in denying the motion to remand. *See Abudu*, 485 U.S. at 104. As the BIA had a valid basis to deny the motion to remand, it did not abuse its discretion in doing so. We, in turn, deny Niz-Chavez's petition for review of that decision.

### III. CONCLUSION

For the foregoing reasons, we DENY Niz-Chavez's petition for review and AFFIRM the decision of the BIA.